IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

-----------------------------------------------------------------X Civil Action No.: 2:19-cv-1327
DEIDRA HUBAY, ROBERT LOSIENIECKI,
JESSICA DORANTES and
ALEXIS GABRIELLE HERRICK,

                Plaintiff,

    vs.

JANELLE MARINA MENDEZ, PAMELA HEAL
and MILITARY SEXUAL TRAUMA MOVEMENT,
-----------------------------------------------------------------X

**AFFIRMATION OF ROBERT G. ANDROSIGLIO, ESQ. IN SUPPORT OF MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT PURSUANT TO FRCP §55(C)**

        **ROBERT G. ANDROSIGLIO**, an attorney admitted to practice before this Court, affirms the following under penalty of perjury:

        1.     I am a partner with the Law Offices of Robert G. Androsiglio, P.C., attorneys for the defendants, and as such, am fully familiar with the facts and circumstances of the within action based upon my review of the file maintained in this office.

        2.     I submit this affirmation in support of defendant's Motion for an Order pursuant to FRCP § 55(C) setting aside the clerk's entry of default, extending defendants time to serve an Answer to plaintiffs' Summons and Complaint and compelling plaintiffs to accept defendants' Answer.

        3.     In the within action, plaintiffs seek damages against defendants for alleged copyright infringement; invasion of privacy; declaratory judgment; and intentional infliction of emotional distress. Plaintiffs allege that defendants have improperly use photographs of the plaintiffs without their consent and in violation of their registered copyright of the pictures causing monetary and physical/psychological damages. (Annexed hereto and designated as Exhibit "A" os a copy of plaintiffs' complaint).

        4.     As explained more fully in the Affidavit of defendant, Janelle Mendez, defendants' default should be vacated and plaintiff should be compelled to accept defendants Answer.

        5.     The default taken by plaintiffs' counsel is a classic example of how the practice of

law has been reduced to parties failing to extend common courtesies and attempt to seek an unfair or improper advantage.

6. Plaintiffs' counsel had knowledge that this firm was representing the defendants yet filed a default rather then extend a courtesy to allow the service of an answer.

7. On October 21, 2019, plaintiff's counsel emailed this office inquiring if we were representing the defendants and whether we would accept service on their behalf.

8. Upon receipt of the aforementioned October 21, 2019 email this office commenced communications with plaintiffs' counsel in an attempt to admirably resolve this matter. In fact a total of over twelve (12) email were sent between counsel between October 21, 2019 and November 26, 2019. (Annexed hereto and designated as Exhibit "B" are copies of the emails from October 21, 2019 through November 26, 2019).

9. As evident in said email settlement negotiations were being conducted. In addition, telephone conferences between the counsel were conducted in the hope of resolving this matter.

10. During those telephone negotiations this office advised plaintiffs' counsel that if the within matter could not be resolved this office would have to retain local counsel and move to have your affirmant admitted pro hac vice.

11. This office was actively attempting to settle this matter since the named individual defendants are discharged veterans who are disabled suffering from PTSD and the corporate defendant is a non for profit corporation. Needless to say all defendants had and have little to no financial resources so it would have been in the best interest of the parties to amicably resolve the matter.

12. On November 21, 2019, plaintiff's counsel notified this office that he filed for a default. See Exhibit "B" November 21, 2019 email. In response to the application for a default, this office sent a follow up email to plaintiffs' counsel seeking to obtain an extension of time. Plaintiffs' counsel not only denied our request he also refused our request for an extension of defendant Heal who was not at that time in default. (Annexed hereto and designated as Exhibit "C" is a copy of the

November 26, 2019 email ).

13.     Since, plaintiffs' counsel would not extend a courtesy and agree to extend my clients' time to answer, this office then moved to be admitted pro hac vice which was granted by the Court on December 11, 2019. Defendants who have limited resources had to obtain the necessary funding to retain this office as well as local counsel to represent them in this matter which resulted in a delay in officially retaining this firm. Immediately upon being retained this office moved to be admitted pro hac vice.

14.     Its long been held that in order to obtain a default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure, there must first be an entry of default as provided by Rule 55(a). Systems Indus., Inc.v. Han, 105 F.R.D. 72, 74 (E.D. Pa. 1985) ("Entry of a default is a prerequisite to entry of a default judgment under Rule 55(b)"). Rule 55(a) provides, "[w]hen a party against whom a Judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). If the damages sought by the plaintiff are a sum certain or a sum that can be ascertained by computation, Judgment will generally be entered for that amount without an evidentiary hearing. In re Sardo Corp., 1995 WL 871168, *5 (E.D. Mich. 1995). Upon motion by the party entitled to default, a Judgment by default may be entered by the Court in cases where the plaintiff's claim is not for a sum certain. Fed. R. Civ. P. 55(b)(2).

15.     Pursuant to Rule 55(b)(2), "[i]n all other cases the party entitled to a Judgment by default shall apply to the court therefore[,]" and "[i]f, in order to enable the court to enter Judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States."

16.     There are three factors that must be considered to set aside a Clerk's Entry of Default

under Rule 55(c): (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether culpable conduct of the defendant led to the default. All three factors must be weighed, however when the first two factors militate in favor of setting aside the default, it is an abuse of discretion for a district court to deny a Rule 55(c) motion.

18. In the within matter, defendants satisfy all three factors which warrant the setting aside the default.

**(1) Plaintiffs Will Not Be Prejudiced If the Default Is Vacated**

19. Approximately 35 days has past since the entry of the default. A hearing for a judgment of default is scheduled for January 14, 2020. No determination has been made on the alleged damages claimed by plaintiffs. The short amount of time from the entering of the default until defendants moved to set aside the default clearly establishes that plaintiff would not be prejudiced.

20. Furthermore, plaintiffs knew of defendants position that they are claiming the rightful ownership of the copyrighted photographs since defendants had prior to retaining counsel, sent numerous correspondence to plaintiffs' counsel with accompanying proof as to their rightful ownership of the photographs in questions.

21. The litigation in this matter is the infancy stage. Plaintiffs can not claim that the passage of time from the entry of the default to the making of this motion caused plaintiff to not obtain witnesses or documents thereby prejudicing their position.

22. Certainly, the claimed prejudice must consist of more than just those incidents that arise anytime a court vacates a judgment. See Werner v. Carbo, 731 F.2d 204, 207 (4 Cir.1984) (finding that the movant suffered no unfair prejudice under Rule 60(b) where he merely alleged the prospect of protracted proceedings, time and expense of trial, and loss of judgment interest). On the other extreme, prejudice clearly arises when the delay produced by vacating the default judgment will result in loss of evidence, increased difficulties in discovery, or greater opportunities for fraud or collusion. See GuideOne Mut. Ins. Co. v. Iglesia Bautista Resurreccion, No. 11-20497-CIV,

2011 WL 3584212, at *3 (S.D. Fla. Aug. 12, 2011) (quoting Berthelsen v. Kane, 907 F.2d 617, 621 (6 Cir. 1990)). In the within matter clearly there was no delay in moving to vacating the default.s

**(2) Defendants Have A Meritorious Defense**

23. Defendants have a meritorious defense. In fact Defendants are the party in this matter who have been aggrieved.

24. The individual defendants started the company, corporate defendant MILITARY SEXUAL TRAUMA MOVEMENT ( hereinafter "MSTM") in or about June 11, 2019, with the purpose to advocate for military sexual trauma victims.

25. On or about August 2019, Defendants organized an event entitled *MSTM Takes on Washington, DC.* The event was to promote awareness, lobby congressmen and senators, and, if necessary, protests to raise awareness as to the plight of women who have suffered sexual trauma in the military.

26. Plaintiff Losieniecki was a participant of the trip and was an official volunteer as of August 2019. Plaintiff Losieniecki was provided staff lodging at MSTM's expense for his services. As a condition for Plaintiff Losieniecki to attend and work the event a letter had to be sent from Defendants to his school requesting his excusal from classes. The letter which was drafted and sent out by his wife, Plaintiff Hubay stated, " One of your students, Robert A. Losieniecki, will be the photographer-on-duty for Military Sexual Trauma Movement, Inc. Our Movement will be in Washington D.C. from Sept. 10th to Sept. 15th to host a conference and to uphold our civic duties by speaking with our legislators about Military Sexual Trauma. Due to Robert's instrumental role in documenting this educational experience, I respectfully ask that you excuse his absence so that he may help raise awareness and fulfill his civic duties surrounding Military Sexual Trauma. This is a tremendous opportunity for the student to meet with their legislators, hear speakers, and educate themselves and the public." (Annexed hereto and designated as Exhibit " D" is a copy of the letter).

27. Many volunteers were given money for services or products were provided to them in exchange for their services. In Plaintiff Losieniecki's case, his wife, Plaintiff Hubay, was paid

$129.00 via Facebook cash transfer on September 13, 2019 at 6:11 for the purchase of two SIM cards that contained photos of the events and protest that took place during the movement's event in Washington, DC. Once plaintiff Hubay, received confirmation on her cell phone of the payment, plaintiff Losieniecki, provided defendant Mendez, both SIM cards to complete the transaction. (Annexed hereto and designated as Exhibit "E" is a copy of the payment transaction).

28. Plaintiffs Losieniecki and Hubay, sold the SIM cards with the knowledge and understanding that defendants Mendez and Heal, were going to upload the photos to defendant's MSTM's website and social media sites.

29. As a result of purchasing the photographs defendants registered the photographs with the US Copyright Office and was assigned Registration Number VA2-176-197. (Annexed hereto and designated a Exhibit "F" is a copy of the Certificate of Registration.)

30. As a requirement for attending the event, every member who attended was required to sign a Consent Form for release of information and media consent. (Annexed hereto and designated as Exhibit "G" is a sample of that form.) These forms specifically stated that all images are property of defendant MSTM and would be shared with media outlets.

31. Plaintiffs signed these Consents. Plaintiffs Hubay, Dorantes and Herrick, were on a special committee called the Senior Leadership Team that was established by the Board of Directors of MSTM, and as a result of their position they had access to MSTM's confidential digital digitally stored files. Upon Plaintiffs, Hubay, Dorantes and Herrick, resignations from the committee, the aforementioned confidential digital digitally stored files were illegally removed by Plaintiffs, Hubay, Dorantes and Herrick.

32. Plaintiffs Hubay, Dorantes and Herrick, were all assigned roles within MSTM. However, plaintiff Hubay sought a greater role in the company for herself requesting to be on the Board of Directors and insisted that plaintiff Losieniecki be appointed as the treasurer and/or CFO of the company and assume all control of the companies finances. When plaintiff Hubay's request for greater control was rejected by the board she along with plaintiffs Losieniecki, Dorantes and

Herrick coordinate a course of conduct to retaliate against defendants.

33. Thereafter, plaintiffs in an attempt to thwart and harm the defendants took a course of conduct including illegally copyrighting the photographs which were sold to the defendants while knowing that defendants already copyrighted the photographs and were the rightful owners.

34. Thereafter, with an illegally obtained copyright of the photographs which were previously copyrighted by defendants, plaintiffs took on a course of conduct to harm and injure the defendants including notifying newspapers, websites and social media accounts that the photographs being used in were illegal and against the owners' consent. These statements were false and improper. Plaintiffs by improperly claiming to be the owners of the photographs caused the photos to be taken down from various news sites and social medial accounts and as a result hurt in MSTM's attempt to fund raise.

35. Not satisfied with hurting the company in their fund raising efforts, plaintiff thereafter notified the numerous periodicals which were reporting the actions of the company and falsely stating that they are owners of the copyright to the photographs and that said photographs were being illegally used while in violation of their copyright when plaintiffs knew that they did not own those photographs and the statements made to social media outlets and news reporting agencies were false and done with the intent to harm the defendants.

36. The aforementioned acts perpetrated by plaintiffs were done with the intent and sole purpose to harm the defendants.

37. In fact, plaintiffs were not satisfied with merely disrupting and causing financial harm to the company. They also shared information of their lawsuit and their attacks against the defendants with Anna Bourk, a known sympathizer of Marines United, also known as MU or Mike Uniform. Marines United is a group of radical current and former Marines who have joined together and posted on various online social media outlets posting sexually harassing comments and nude images of female service members which resulted in stalking and violence against victims attached in the post. As a result of this conduct over 15 service member were Court-Martial. Marines United

has made ongoing threats to defendant Mendez, since 2018, some of which were published in various news media outlets, with such threats so severe that her former employer had to hire security at the workplace for her protection.

38. Plaintiff Hubay, knew about this and intentionally shared the information with these groups so that they could further increase their attacks on defendant.

39. These actions and other actions of the plaintiffs were done with the sole intent to harm and cause damage to the defendants.

40. Based upon the foregoing defendants established that they have a meritorious defense against plaintiffs claims against their alleged copyright infringement and in fact defendants are the party who rightly have claims against plaintiffs for copyright fraud and other claims.

**(3) Defendants Conduct Did Not Meet The Requirements To Obtain A Default**

41. Both defendants Mendez and Heal suffer from PTSD which has rendered them permanently disable. As a result they have limited finances which required them to seeks other resources to retain this office as well as local counsel to defend this matter.

42. In addition, defendant Heal's PTSD was triggered as a result of the stress from this action resulting in her hospitalization (Annexed hereto and designated as Exhibit "H" is a letter documenting Ms. Heal full time commitment into a mental health facility).

43. Furthermore, defendant Mendez was afflicted with kidney stones which progressed to sepsis resulting in multiple hospitalizations and emergency surgery. (Annexed hereto and designated as Exhibit "I" are records documenting Ms. Mendez's medical problems which she been suffering from since December 2, 2019).

44. As a result of the financial and medical conditions suffered by defendants Mendez and Heal this office was unable to properly meet and review the alleged claims against them until recently.

45. Based upon the aforementioned defendants' conduct did not meet the requirements to obtain a default and as a result defendants' default should be vacated.

46. Finally it's the policy of the Courts disfavoring default judgments and encouraging decisions on the merit. See Sourcecorp Inc. v. Croney, 412 F. App'x 455, 459-60 (3d Cir. 2011) ("Default judgments are disfavored in our Circuit . . . . [W]e have previously held that the costs associated with continued litigation normally cannot constitute prejudice."); Days Inn Worldwide, 2016 WL 6126939, at *2 ("Plaintiff has not identified any special harm that it will suffer if the Court vacates its entry of default judgment.").

47. Therefore, it is respectfully requested that the Court grant an Order pursuant to FRCP § 55(C) setting aside the clerk's entry of default, extending defendants time to serve an Answer to plaintiffs' Summons and Complaint and compelling plaintiffs to accept defendants' Answer.

48. No prior relief has been request herein

**WHEREFORE**, it is respectfully requested that defendants' motion be granted together with such other and further relief the Court deems just and proper.

Dated: New York, New York
December 29, 2019

                                            **ROBERT G. ANDROSIGLIO, ESQ.**