**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

--------------------------------------------------------------X Civil Action No.: 2:19-cv-1327
DEIDRA HUBAY, ROBERT LOSIENIECKI,
JESSICA DORANTES and
ALEXIS GABRIELLE HERRICK,

                    Plaintiff,

      vs.

JANELLE MARINA MENDEZ, PAMELA HEAL
and MILITARY SEXUAL TRAUMA MOVEMENT,
--------------------------------------------------------------X
**DEFENDANTS'**
**FINDINGS OF FACTS AND**
**CONCLUSIONS OF LAW**

Upon the hearing on the parties Cross-Motions for a Preliminary Injunction converted to a Declaratory Judgment by this Court's Order dated June 4, 2020, and the issues of this action having been heard before Honorable J. Nicholas Ranjan on May 8, 2020 and May 13, 2020, and having considered the allegations and proofs of the respective parties, and due deliberation having been had thereon;

NOW, after hearing the testimony, I do hereby make the following findings of essential facts which I deem established by the evidence and reach the following conclusions of law.

**FINDINGS OF FACTS**

1.      Plaintiff Robert Losieniecki took photographs during the DC Trip. (See May 8, 2020 Transcript Page 12, Lines 20-25). Plaintiff Robert Losieniecki took 556 photographs on September 12th and 817 photographs on September 13th during the DC Trip. ( May 8, 2020 Transcript Page 13, Lines 14-17).

2.      Plaintiff Robert Losieniecki testimony is not credible in that he claims he did not wear uniform colors of black and red. (See May 8, 2020 Transcript Pages 37-39, Lines 17-2 & May 13, 2020 Transcript Page 94 Lines 20-22) His credibly is further questionable since he testified that it only took 10-15 minutes to drive back from the airport after picking up Ms. Heal. (See May 8, 2020

Transcript Page 42, Lines 23-25). It was proven that he picked up Defendant Pamela Heal in Baltimore and drove back to DC taking a substainally longer time then what was claimed by Losieniecki. (See May 13, 2020 Transcript Page 128, Lines 9-25). He also testified that it took a total of 1,373 photographs for his wife and not for the movement. (See May 8, 2020 Transcript Page 20, Lines 8-11).

3.      Plaintiff Robert Losieniecki submitted letter to his school which designated him "photographer on duty." (See May 8, 2020 Transcript Page 26, Lines 13-19 & Transcript Page 47, Lines 12-21 ). Plaintiff Deidra Hubay to insert the language "photographer of duty" when she drafted the letter. (See May 8, 2020 Transcript Page 102, Lines 8-15). Plaintiff Deidra Hubay introduced Plaintiff Robert Losieniecki as photographer for the movement. (See May 13, 2020 Transcript Page 137, Lines 5-21).

4.      Plaintiff Robert Losieniecki did not direct how photographs should be taken. (See May 8, 2020 Transcript Page 36, Lines 4-7). Defendant Janelle Marina Mendez directed Plaintiff Robert Losieniecki how to take the photographs. (See May 13, 2020 Transcript Page 96, Lines 4-14).

5.      Plaintiff Robert Losieniecki filled out volunteer form which contained his phone number and email and he did not direct how photographs should be taken. (See May 8, 2020 Transcript Pages 24-25, Lines 13-5 & Pages 39-40, Lines 19-3). He signed up as a volunteer for MSTM. (See May 13, 2020 Transcript Page 87, Lines 9-24 & Page 124, Lines 7-16). He was a volunteer for the MSTM. (See May 13, 2020 Transcript Page 124, Lines 7-14).

6.      Plaintiff Deidra Hubay's testimony is not credible as she claims she submitted a volunteer form with her husband's information rather then him submitting same. (See May 8, 2020 Transcript Page 79-81, Lines 20-3). Plaintiff Deidra Hubay claimed she only sent the consent to one person. (See May 8, 2020 Transcript Page 138, Lines 2-6). She admitted that she removed files from the company. (See May 8, 2020 Transcript Pages 172, Lines 4-11 & May 13, 2020 Transcript Page 39-40, Lines 13-15). Plaintiff Alexis Gabrielle Herrick also admitted going into the system and

deleting her file. (See May 8, 2020 Transcript Pages 244, Lines 6-22). Defendant Janelle Mendez discovered while still in Washington DC that Plaintiff Deidra Hubay removed files belonging to the company. (See May 13, 2020 Transcript Page 110, Lines 1-9).

7.    Plaintiff Deidra Hubay advised others of scholarships and that there was a house for the senior leadership to reside. (See May 13, 2020 Transcript Page 9, Lines 14-23).

8.    There was a central work/meeting/planning area call "the outrage" where meeting were held prior to protest in DC. (See May 13, 2020 Transcript Page 11, Lines 3-8 & Page 98-99 Lines 8-10).

9.    Defendant Janelle Marina Mendez is the CEO and founder of MSTM. (See May 13, 2020 Transcript Page 33 Lines 18-22 & May 13, 2020 Transcript Page 81 Line 24). MSTM is a non-for profit corporation. (See May 13, 2020 Transcript Page 84, Lines 2-19).

10.    Defendant Janelle Marina Mendez filed for copyrights of the pictures. (See May 13, 2020 Transcript Page 48 Lines 4-6). Since Plaintiff Robert Losieniecki was a volunteer the photographs taken was work for hire according to the copyright office. (See May 13, 2020 Transcript Page 50 Lines 18-22). Copyright office advised there was no need for a written agreement with Plaintiff Robert Losieniecki since he was work for hire. (See May 13, 2020 Transcript Page 50 Lines 18-22)

11.    Defendant Janelle Marina Mendez controlled the work of Plaintiff Robert Losieniecki with specific photographs that needed to be taken. (See May 13, 2020 Transcript Page 54 Lines 5-20). Defendant Janelle Marina Mendez gave instructions to Plaintiff Robert Losieniecki. (See May 13, 2020 Transcript Page 95-96 Lines 25-14). Defendant Janelle Marina Mendez controlled the scheduled for Plaintiff Robert Losieniecki as to when and where pictures would be taken. (See May 13, 2020 Transcript Page 96-97 Lines 15-19). Plaintiff Robert Losieniecki was a volunteer.

12.    The Senior Leadship Committee agreed to make Plaintiff Robert Losieniecki the photographer for the movement. (See May 13, 2020 Transcript Page 89 Lines 12-25).

13.    As compensation scholarship lodging was provided to Plaintiff Robert Losieniecki.

-3-

(See May 13, 2020 Transcript Page 90 Lines 6-8). Plaintiff Robert Losieniecki stayed at the staff house which was comprised of all volunteers and he was the volunteer photographer. (See May 13, 2020 Transcript Page 91 Lines 2-25). He accepted the scholarship by agreeing to the terms and staying at the lodging. (See May 13, 2020 Transcript Page 92 Lines 2-8).

14.     Defendant Janelle Marina Mendez discovered after the Commandant protest that all of MSTM's files were removed. (See May 13, 2020 Transcript Page 110 Lines 1-9). Defendant Pamala Heal filed her consent which was removed by Plaintiffs. (See May 13, 2020 Transcript Pages 142-143, Lines 8-18).

15.     Keke Santiago filled out consent forms which were removed by Plaintiff Deidra Hubay. (See May 13, 2020 Transcript Page 153 Lines 20-8).

16.     Lisa Mary Nolasco filled out consent forms which were removed by Plaintiff Deidra Hubay. (See May 13, 2020 Transcript Page 167 Lines 13-25).

17.     Plaintiff Robert Losieniecki was introduced to Lisa Mary Nolasco by Plaintiff Deidra Hubay as the photographer and that he is working the camera. (See May 13, 2020 Transcript Page 167 Lines 3-12).

18.     Kelsey Paige Harbor understanding was that Plaintiff Robert Losieniecki was a volunteer for MSTM and that he ws designated as the official DC Volunteer for the photography. (See May 13, 2020 Transcript Page 175 Lines 2-9). Ms. Harbor also filled out consent forms which were removed by Plaintiff Deidra Hubay. (See May 13, 2020 Transcript Page 175 Lines 20-25).


## CONCLUSIONS OF LAW

### MSTM is the Copyright Owner Pursuant to  17 U.S.C.S § 101(1).

At issue is whether Mr. Losieniecki was employed by MSTM to be its photographer for MSTM during the DC Trip, or was merely present to support his wife, Ms. Hubay and to build her personal and political portfolio.   When the work for hire factors are applied, it is apparent that the nature of Mt Losieniecki's role is such that it is MSTM, and not Mr. Losieniecki who is the

copyright owner of the pictures at issue.

### A.  For Copyright Purposes, Mr. Losieniecki was MSTM's Employee.

Critical to the Court's overall determination is determining whether Mr. Losieniecki was MSTM's employee and then whether the photographs he took fall within the scope of that employment.  At the outset,  that Mr. Losieniecki was not an employee in the tradition or more limited sense of the word is no bar, because as was made clear in *CCNV*,  the terms "employee"  and "scope of employment"  as used by  §101(1), are to be construed in light of general principles of agency law.  *TD Bank N.A. v. Hill*, 928 F.3d 259, 276 (3rd Cir. 2019) citing *CCNV v. Reid*, 490 U.S. 730, 740 (1989.)    Accordingly, employment in this instance is expansive enough to cover non-salaried employees, those paid in kind, and arguably even volunteers, *cfn. Maness v. Heavrin*, 40 U.S.P.Q.2d 1541, 1542 (8th Cir. 1996) citing *CCNV* at 742-43 n.8.

Determining Mr. Losenick's employment status requires the court to examine; (1) MSTM's right to control the manner and means of the photographs; (2) actual control over the details of the photographs; (3)  Mr. Losieniecki's occupation; (4) local custom; (5) the skill required; (6) the source of the tools; (7) the work location; (8) the length of employment; (9) the right to assign more work;  (10) Mr. Losenick's discretion over his work hours; (11) the payment method; (12) the regular business of MSTM; (13) the parties' understanding;  (14) MSTM's role in hiring assistants; (15) tax treatment; (16) employee benefits; and (17) whether MSTM is in business. *Marco v. Accent Publ'g Co.*, 969 F.2d 1547, 1550 (3rd. Cir. 1992).  All of the factors need not favor one party unanimously or even be considered by the Court.  Rather, a determination can be made when on the particular basis of six of the six of the factors and/or when the evidence as to some of the factors is indeterminate. *cfn. Id*. at 1550-51 and 1552.  See also *Morgan v Hawthorne Homes, Inc.*  2009 U.S. Dist. LEXIS 31456* 21-24 (W.D. Pa. 2009) wherein less than all of the *Marco* factors are considered/discussed.

After applying the evidence to the factors, it is apparent that Mr. Losieniecki was a MSTM employee for §101(1) purposes.  With regard to the first, second, seventh factors, and tenth factors,

the evidence is clear that MSTM had the right to, and actual control over, the manner and means of creating the photos and their details as well as the location the work was performed, and that it, not Mr. Losieniecki, who created the agenda and timetable for the events on the DC trip and thus the locations and times where and when the photos were to be, and were taken. It was also MSTM's Ms. Heal and Ms. Mendez, not Mr. Losieniecki, who arranged how MSTM members were to stand in the photos, especially the "formation" photos that were taken. They too directed Mr. Losieniecki as to which photos to take. Additionally, it was MSTM that set forth the rules for the trip that Mr. Losieniecki agreed to comply with-including the colors of clothing to be worn in order to be identified with MSTM. As pictures introduced into evidence confirm, Mr. Losieniecki did indeed wear clothes with the colors specified by MSTM. Consequently, the first, second, seventh, and tenth factors favor MSTM's ownership of the copyrights.

Additionally, the eleventh and thirteenth factors favor MSTM because the evidence demonstrates that he received payment in the form of lodging paid for by MSTM and that the parties understood that Mr. Losieniecki was MSTM's photographer for the trip and not just there to support his wife. With regard to the parties' understanding, Mr. Losieniecki submitted an excusal form-drafted by Ms. Hubay- to Duquense University stating that he was to be the photographer-on-duty for MSTM for the DC Trip. He also agreed to abide by the terms governing all of the volunteers on the DC trip is evidenced by his wearing MSTM colors as required by those terms. If he was just there to support his wife and solely document her involvement, then no such compliance would have been necessary. Similarly, Ms. Dorantes introduced him to Ms. Ortiz as MSTM's photographer, Ms. Heal overheard Ms. Hubay introduce Mr. Losieniecki as MSTM's photographer, and Ms. Harbor testified that his role as the official photographer was discussed in the planning meetings.

Furthermore, Mr. Losieniecki took many pictures of individual MSTM members who are not his wife and in which his wife does not appear. Also, in many of the pictures in which his wife does appear, such as the "formation" photos, she is obscured by other MSTM members and/or otherwise not the center of focus or attention in the photos' compositions. Consequently, he and

others associated with MSTM acted in conformity with the shared understanding that Mr. Losieniecki was MSTM's photographer and not present to merely support his wife and develop her portfolios.

In payment for his time and service of MSTM's photographer, Mr. Losieniecki got his lodging paid for by MSTM.  MSTM similarly covered the lodging costs of others who had an official role and job responsibilities in connection with the DC Trip.  By contrast other trip attendees, such as Ms. Newton, who did not have an official role and responsibilities, had to pay their own way. Taken all together, it is clear from the evidence that the parties'  understanding was that Mr. Losieniecki was MSTM's photographer during the DC Trip  and that he received payment in the form of his lodging costs being covered-a benefit only provided to those with official roles and responsibilities.  Accordingly, the eleventh and thirteenth factors favor MSTM.

Finally, the twelfth and seventeenth factors also favor MSTM.  As stated in the testimony, MSTM is a nonprofit whose activities involve political and public engagement as demonstrated by the DC Trip.  As Ms. Mendez testified, the purpose of the photographs was therefore for news reporting and public education. Consequently, these factors provide context for the photographs and that context supports MSTM's copyright ownership.

As to the remaining factors, only the source of the tools factor clearly favors Mr. Losieniecki, while the tax treatment and employee benefits factors arguably do, if they are found to apply to MSTM's circumstances at all.  The rest are indeterminate based on the record.  Consequently, on balance the factors support the conclusion that Mr. Losieniecki was MSTM's employee for §101(1) purposes.

**B.  The Photographs taken are within the Scope of Employment.**

Additionally, because the photographs taken were within Mr. Losieniecki's scope of employment, MSTM is the proper copyright owner in those photos.

A work falls within the scope of employment if, (a) it is the kind of work Mr. Losieniecki was employed by MSTM to perform; (b) occurs within substantially within the authorized time and

space limits; and (c) is actuated, at least in part, by a purpose to serve MSTM. *TD Bank N.A.,* 928 F.3d at 276-77.

As set forth above the evidence demonstrates that Mr. Losieniecki was employed to by MSTM's official photographer for the DC trip and that he was to take photographs to be used in news reporting and in MSTM's public education efforts.  The evidence also establishes that he took these photographs during events scheduled and arrangement by MSTM.   Accordingly, the photographs were taking within the scope of his employment. As a result, it is MSTM and not Mr. Losieniecki who is the proper copyright owner.

**Lacking Clear Factual and Legal Support for their Position, the Collective Plaintiffs are not Entitled to a Judgment that the Consent Forms are Inapplicable.**

The Collective Plaintiffs also seek a Declaratory Judgment that they did not execute the consent forms, but if they did those forms were limited in scope and revocable.   They are cannot, however, meet their burden of proof in light of evidence to the contrary and the lack of supporting legal authority. For these reasons, the Collective Plaintiffs are not entitled to the Declaratory Judgment they seek.

As the party seeking declaratory judgment on this issue, the Collective Plaintiffs have the burden of proof regarding the consent forms.  *cfn*. *Worster-Sims v. Tropicana Entm't, Inc.*, 2014 U.S. Dist. LEXIS 141598*12 (D.N.J. 2014.) citing *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 272 (U.S. 1941.)  Given the nature of the declaration that the Collective Plaintiffs seek, it is akin to a summary judgment on the issue of the consent forms.  Consequently, they bear the burden of demonstrating that there is no issue of material fact and that as a result they are entitled to judgment as a matter of law.   *See Fed.R.Civ. P. 56(a)*. Conversely, MSTM must at least present probative evidence from which the jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 257 (U.S. 1986.)

In this case, the collective Plaintiffs claim that they never executed MSTM's consent forms.

-8-

Ms. Hubay goes further and argues that the consents were voluntary. This testimony is contradicted by both Ms. Ortiz and Ms. Nolasco who both testified that the executed the consent forms because it was a condition of the DC Trip. Further casting doubt on collective Plaintiffs' and Ms. Hubay's testimony is the disappearance of their electronic personnel files from MSTM's database, particularly since the individuals who could do so was limited and included Ms. Hubay and Ms. Herrick. Accordingly, there are issues of material fact with respect the claims that such forms were voluntary and never executed, just as there is probative evidence to the contrary. Consequently, the collective Plaintiffs are not entitled to a declaratory judgment in their favor.

Similarly, they are not entitled to a judgment in their favor on the basis that the consents lack consideration and are terminable at will due to their unspecified length, because the cases that the Collective Plaintiffs cite in their Fourteenth Affirmative Defense of their Answer to Counterclaim are limited to service contracts and mineral leases and therefore are inapplicable. *See* ECF No. 32, p.25, ¶ 25. For example, collective Plaintiffs cite cases in involving service contracts, in the case of *Price v. Confair* and *Piecknick v. Pennsylvania* or a mineral lease, in the case of *Hutchinson v Sunbeam Coal.* In the case of the latter, the court clearly does not state a legal proposition that applies to contracts. Instead, it is clearly limited to leases, and then in fact allows perpetual terms if they are stated in express and unequivocal terms. *Id* at 519 A.2d 385, 390 n.5 (Pa. 1986) With respect to the former cases, they clearly state that their holdings apply only to contracts requiring one party to render service to another. *Price v. Confair*, 79 A.2d 224, 226 (Pa. 1951), *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1259 (3rd. Cir. 1994.) They do not espouse more general legal propositions that apply to the consent at issue. Accordingly, the collective Plaintiffs are without legal authority for their request.

### Even if the Consents do not Apply, No Invasion of Privacy or False Light has Occurred.

But in any event, a declaratory judgment with regard to the consents is not dispositive and neither clears the way for Ms. Hubay's and Ms. Dorantes' invasion of privacy claims, nor their and

Mr. Losieniecki's false light claims given the public nature of their involvement and the lack of misrepresentation of the activities of the DC Trip.

### A. Ms Hubay's and Ms. Dorantes' Involvement with MSTM and the Issue of Sexual Trauma in the Military was Public Prior, and During, the DC Trip.

Pennsylvania courts recognize that the invasion of privacy that the invasion of privacy is not one tort, but a complex of four that includes the misappropriation of one's name or likeness. *Marks v. Bell Tel. Co.*, 331 A.2d 424, 430 (Pa. 1975.)   To prove this, or any other facet of an invasion of privacy,  a plaintiff must show that there was an intentional intrusion on their private concerns, which was substantial and highly offensive to a reasonable person, and  that intrusion would have caused mental suffering, shame, or humiliation to a person of ordinary sensibilities. *Pacitti v. Durr*, 2008 U.S. Dist. LEXIS 27527*67 (W.D. Pa. 2008.)   citing *Pro Golf Mfg. v. Tribune Review Newspaper*, 809 A.2d 243, 248 (Pa. 2002.) Accordingly, this claim requires that Ms. Hubay and Ms. Dorantes have a reasonable expectation of privacy with respect to their association with MSTM. *See Pacitti* at*69.  Consequently, liability cannot be based upon that which they themselves have left open to the public eye. *Harris v. Easton Pub. Co.*, 483 A.2d 1377, 1384 (Pa. Super. 1984.)

In this case, no invasion of privacy occurred because Ms. Hubay's and Ms. Dorantes' association with MSTM and the military sexual trauma movement more generally was public before and during, the DC Trip.  Both Ms. Hubay and Ms. Dorantes testified that they were officers and/or official volunteers for MSTM.  Both testified that they attended the DC trip and participated in the various activities including those at the Capitol.  As is evident from the photographs at issue, both participated in the photographs, wearing the color scheme of MSTM, and did not try to opt out or otherwise obscure themselves at the time the photographs were taken in public places.  Their involvement with MSTM is something that they made public at the time.  They also both stated that they are still supportive of, and actively involved in, bringing voice to those who have suffered sexual trauma while in the military.  There is also strong evidence that they signed consents allowing MSTM to use their likenesses, though those consents were arguably removed. Nevertheless, and

-10-

taken all together the above evidence demonstrates that Ms. Hubay and Ms. Durantes did publicly associate themselves with MSTM and continue to advocate publicly/be associate with those who suffered sexual trauma while in the military.   Therefore, a reasonable person would not find MSTM's actions highly offensive or that they would cause injury to a person of ordinary sensibilities.

**B.   The Photographs do not Misrepresent that Activities and Involvement in the DC Trip.**

Regarding the false light claims, liability for false light arise when one publicly places another in a false light if; (a) the false light in which the other is placed would be highly offensive to a reasonable person; and (b) the actor had knowledge of, or acted in reckless disregard, as to the falsity of the publicized matter and the false light in which the other would be placed. *Karajewski v Gusoff*, 53 A.3d 795, 805-806 (Pa. Super. 2012).   Consequently, a false light claim will be found where a major misrepresentation of a person's character, history, activities, or beliefs is made that could reasonably be expected to cause a reasonable man to take serious offense. *Rush v. Philadelphia Newspapers*, 732 A.2d 648, 654 (Pa. Super. 1999.)

The crux of their false light claim is that MSTM's use of the photographs gives the incorrect impression that Ms. Hubay, Ms. Dorantes, and Mr. Losieniecki were (a) involved with the September 14th protest and/or (b) continue to be involved with MSTM after the DC Trip.   At the outset and with respect to Mr. Losieniecki, no reasonable person would take serious offense because he does not appear in any of the photographs used on MSTM's social media. Therefore, no visible connection via the photographs connects him to MSTM. Similarly,  since none of the photographs at issue document the September 14th protest-let alone Ms. Hubay's and Ms. Dorantes' involvement, because they were not even present- a reasonable person would not take serious offense to the use of other photographs that accurately record Ms. Hubay and Ms. Dorantes' involvement with MSTM's activities at the Capitol, because nothing in those photographs connects them to the September 14th protest.   For this same reason, a reasonable person would not take offense because

the photographs accurately represent Ms. Hubay and Ms. Dorantes' involvement with MSTM's activities at the Capitol.   Accordingly, the use of the photographs does not put Ms. Hubay, Ms. Dorantes, and/or Mr. Losieniecki in a false light.

## CONCLUSION

Wherefore it is respectfully requested based upon the foregoing arguments that the Court issue a declaratory judgment in favor of the Defendants declaring defendants the rightful owners of the photographs and copyrighted by Defendants together with such other and further relief as the Court deems just, proper and equitable.


Dated:      New York, New York
            June 10, 2020                          Respectfully submitted,

                                                   THE LAW OFFICES OF
                                                   ROBERT G. ANDROSIGLIO, P.C.

                                                   By: *Robert G. Androsiglio*
                                                          Robert G. Androsiglio, Esq.
                                                          Bar No.: 2386035
                                                   Attorneys for Defendants
                                                   30 Wall Street, 8th Floor
                                                   New York, New York 10005-2205
                                                   (212) 742-0001
                                                   randrosiglio@rallplaw.com


                                                   DORNISH LAW OFFICE, P.C.

                                                   By: *Brian J. Sommer*
                                                          Brian J. Sommer, Esq.
                                                   Attorneys for Defendants
                                                   2500 Brooktree Road, Suite 301
                                                   Wexford, Pennsylvania 15090
                                                   (412) 765-2726
                                                   bsommer@dornish.net

MEYER, UNKOVIC & SCOTT LLP
Attorneys for Plaintiffs
535 Smith Street, Suite 1300
Pittsburgh, Pennsylvania 15222
(412) 456-2800

## CERTIFICATE OF SERVICE

I, **Robert G. Androsiglio**, attorney for the Defendants, certify that on June 10, 2020, I served

the **DEFENDANTS' FINDINGS OF FACTS AND CONCLUSIONS OF LAW**, by  uploading

a true copy of same to the Court's Website for dissemination upon Plaintiffs' counsel namely:

MEYER, UNKOVIC & SCOTT LLP
535 Smith Street, Suite 1300
Pittsburgh, Pennsylvania 15222


THE LAW OFFICES OF
ROBERT G. ANDROSIGLIO, P.C.

By: *Robert G. Androsiglio*
        Robert G. Androsiglio, Esq.
        Bar No.: 2386035
Attorneys for Defendants
30 Wall Street, 8th Floor
New York, New York 10005-2205
(212) 742-0001

-14-