## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEIDRA HUBAY, ROBERT LOSIENIECKI, JESSICA DORANTES and ALEXIS GABRIELLE HERRICK, | ) ) ) ) | |
| | ) | Civil Action No. 2:19-cv-01327-NR |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| | ) | **JURY TRIAL DEMANDED** |
| JANELLE MARINA MENDEZ, PAMELA HEAL and MILITARY SEXUAL TRAUMA MOVEMENT, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

AND NOW COME Plaintiffs Deidra Hubay, Robert Losieniecki, Jessica Dorantes, and Alexis Gabrielle Herrick (collectively, "Plaintiffs") by and through their attorneys, and respectfully submit their Proposed Findings of Fact and Conclusions of Law in support of Plaintiffs' Motion for Declaratory Judgment:

I.    **REQUESTED RELIEF**

1. Plaintiffs request this Honorable Court enter declaratory relief in favor of Plaintiffs and against Defendants that[1]:

     a.      Plaintiff Robert Losieniecki has the exclusive right to ownership, control, and use of all photographs he took at the September Washington, D.C. trip (the "D.C. Photos"), including the twenty-six (26) photographs identified in Plaintiffs' Complaint and attached as Exhibits A – ZZ thereto (the "Registered Photographs").

---

[1] Plaintiffs' prior Motion for Preliminary Injunction was converted to a Motion and Request for Declaratory Judgment by the Court's Order dated June 3, 2020. See ECF No. 61. This change obviates the need to establish irreparable harm as part of the elements of Plaintiffs' requested relief. The Plaintiffs' requests for declaratory judgment do not address the parties' other tort claims, including claims for intentional infliction of emotional distress. As set forth in the Court's Order dated June 3, 2020. damage claims and other claims for relief also are reserved.

b.     The copyright registration owned by Robert Losieniecki identified as VA 2-173-194 and effective October 9, 2019 titled "DC 2019" for the Registered Photographs is valid.

c.     The copyright registration filed on behalf of Military Sexual Trauma Movement, Inc. ("MSTM") identified as VA 2-176-197 and dated October 31, 2019 and titled "Military Sexual Trauma Movement takes on Washington D.C." is invalid and should be stricken from the registration records of the U.S. Copyright Office.

d.     MSTM has no right to ownership, control, and use of any photographs taken by Plaintiff Losieniecki during the DC Trip, including the Registered Photographs.

e.     MSTM and Defendants Mendez and Heal do not have an exclusive license to the photographs taken by Plaintiff Losieniecki during the DC Trip, including the Registered Photographs.

f.     The Defendants Janelle Marina Mendez, Pamela Heal, and MSTM infringed upon Mr. Losieniecki's copyright in the Registered Photographs by copying, publishing, and distributing Plaintiff Losieniecki's Registered Photographs without his consent and after notice of Plaintiff Losieniecki's rights.

g.     Defendants acted willfully in connection with their infringement of Plaintiff Losieniecki's copyright.[2]

h.     Defendants shall not be and are not entitled to use the names and likenesses of Plaintiffs.[3]

---

[2] If this Honorable Court desires to defer considerations of "willfulness" for the damage phase of this case, Plaintiffs are willing to do so.

[3] Defendants, through the testimony of Defendant Mendez, have agreed that they will not use the likenesses and names of Plaintiffs. *See* Transcript of Declaratory Judgment Hearing on May 13, 2020, pg. 76. As such, this request for relief does not appear to be in dispute.  However, as set forth below, such use continues. Any references to the transcript of

i.     Plaintiffs Robert Losieniecki, Deidra Hubay, Jessica Dorantes and Alexis Gabrielle Herrick never entered into a written agreement with MSTM providing any Defendant with the right to use their names and/or likenesses from any source.[4]

j.     Furthermore, to the extent that such permission may be implied or inferred as oral consent during their association with MSTM, Plaintiffs Deidra Hubay, Jessica Dorantes and Alexis Gabrielle Herrick effectively terminated any such implied consent on September 14, 2019 and no later than when the Complaint in this matter was filed.

k.     Even if Plaintiffs Robert Losieniecki, Deidra Hubay, Jessica Dorantes and Alexis Gabrielle Herrick signed the Consent Form attached as Exhibit G to Defendants' Motion to Set Aside Clerk's Entry of Default Judgment, this Consent Form does not any rights to MSTM to use the name and likeness of an executing party and any rights conveyed by this Consent Form were revoked and terminated by and through the resignations of Plaintiffs Deidra Hubay, Jessica Dorantes and Alexis Gabrielle Herrick on September 14, 2019 and no later than when the Complaint in this matter was filed.

l.     Defendants Mendez Heal and MSTM used Plaintiffs Losieniecki's, Hubay's, and Dorantes's likenesses and names without permission to promote, benefit and obtain fundraising for MSTM and after notice of their rights and request for disassociation from MSTM.

---

the Declaratory Judgment hearing held before this Honorable Court on May 8 and 13, 2020 shall hereinafter be cited to in the following manner: DJ Transcript, [date], pg. [#].

[4] Although no use of Plaintiff Herrick's likeness and name by Defendants has been identified, Ms. Herrick requests a declaratory judgment that her likeness and name not be used in the future. As noted below, Defendants continue to possess personal information belonging to Ms. Herrick. *See* Findings of Fact 71.

m.     Defendants misappropriated the names and likenesses of Plaintiffs Hubay and Dorantes by (i) portraying them in a false light – namely, that each continued to have an association with MSTM after their resignations from MSTM.

II.     **FINDINGS OF FACT**

A.     **The Parties.**

1.     Plaintiff Deidra Hubay ("Plaintiff" or "Ms. Hubay") is an individual who resides at 2399 Rose Garden Road, Pittsburgh, Pennsylvania 15220.  Ms. Hubay served in the United States Marine Corps. ("USMC"), beginning in 2015, as a Single & Multichannel Transmissions Operator. She left service honorably in 2018 as an E-4, Corporal. *See* ECF No. 1, ¶ 2; *see also* DJ Transcript, May 8, 2020, pg. 74.

2.     Plaintiff Robert Losieniecki ("Plaintiff" or "Mr. Losieniecki") is an individual who resides at 2399 Rose Garden Road, Pittsburgh, Pennsylvania 15220.  Mr. Losieniecki is married to Ms. Hubay.  Mr. Losieniecki served in the USMC, beginning in 2015, as a Radio & TRC Operator. He left service honorably in 2019 as an E-5, Sergeant, and is still currently a part of the IRR (inactive reserve). *See* ECF No. 1, ¶ 3; *see also* DJ Transcript, May 8, 2020, pg.10.

3.     Plaintiff Jessica Dorantes ("Plaintiff" or "Ms. Dorantes") is an individual who resided at 2677 Idlebrook Circle, Midway Park, North Carolina 28544 at the time this lawsuit was filed and who now resides in Florida.  Ms. Dorantes served in the USMC, from 2012-2016, as an Aviation Supply Specialist and left service honorably as an E-4, Corporal.  She was associated with the Marines Aviation Logistics Squadron 16 at Miramar.  From October 2016 to the present, Ms. Dorantes is currently part of the inactive reserve as an E-5, Sergeant. *Please see* ECF No. 1, ¶ 3; *see also* DJ Transcript, May 8, 2020, pg. 218-19.

4.     Plaintiff Alexis Gabrielle Herrick ("Plaintiff" or "Ms. Herrick") is an individual who resides at 8079 Castle Rock Court, Pasadena, Maryland 21122.  Ms. Herrick served in the USMC, 2008 to 2012, as an Intelligence Analyst and left the service honorably as an E-4, Corporal. She later served in the inactive reserves and left military service completely as an E-5, Sergeant. *See* ECF No. 1, ¶ 5; *see also* DJ Transcript, May 8, 2020, pg. 225.

5.     Upon information and belief, Defendant Janelle Marina Mendez ("Defendant Mendez" or "Ms. Mendez") is an individual who resides at 9K White Gate Drive, Wappingers Falls, NY 12590.  Defendant Mendez is identified as the Chief Executive Officer of Defendant MSTM.  *See* ECF No. 24, ¶ 6.

6.     Upon information and belief, Defendant Pamela Heal ("Defendant Heal" or "Ms. Heal") is an individual who resided in the State of California at the time of filing this lawsuit. Defendant Mendez is identified as the Executive Director of Civic Engagement of Defendant MSTM. *See* ECF No. 24, ¶ 7; Counterclaim, ¶ 2.  At some point during the beginning of 2020, Defendant Heal resided with Defendant Mendez at 9K White Gate Drive, Wappingers Falls, NY 12590 with Defendant Mendez.  In this respect, Defendants Mendez and Heal were physically at the same location during the hearing.

7.     Upon information and belief, Defendant MSTM is a New York not-for-profit corporation, with a principal office at 9K White Gate Drive, Wappingers Falls, NY  12590 (the residence of Defendant Mendez). *See* ECF No. 24, ¶ 8.

8.     The MSTM is registered as a 501(c)(4) entity that focuses on lobbying elected officials on all levels of government to enact policies that protect survivors of military sexual trauma and other discriminatory policies. *See* ECF No. 24, Counterclaim, ¶¶ 3, 8.

**B.**     **Plaintiffs' Association with and Resignation from MSTM.**

9.     Plaintiffs Hubay, Dorantes and Herrick became associated with the MSTM as unpaid volunteers in July of 2019. Plaintiffs Hubay, Dorantes and Herrick each held a position in Senior Leadership during the planning of the DC Trip. *See* DJ Transcript, May 8, 2020, pg. 75-76, 175-176, 187, 228.

10.     Defendants Mendez and MSTM did contemplate having employees for the nonprofit organization, but Plaintiffs Hubay, Dorantes and Herrick were never paid for their services. *See* DJ Transcript, May 8, 2020, pg. 75-77, 176, 187-88; *see also* Defendants' Declaratory Judgment Hearing Exhibits 9 and 58b.

11.     Prior to September 10, 2019, Plaintiffs had not met any of the individual Defendants, or any of the other volunteers or supporters of the MSTM.  Meetings among volunteers were conducted via Facebook Messenger (Video calls) and Google Hangouts using a video call feature.  The DC Trip was the first time that the parties met in person. *See* DJ Transcript, May 8, 2020, pg. 14, 81-82, 180-181.

12.     Plaintiffs Hubay, Dorantes and Herrick as members of the Senior Leadership Team were not made aware that MSTM had a separate Board of Directors and the meeting minutes for any Board of Director meetings were not publicly circulated. *See* DJ Transcript, May 8, 2020, pg. 83, 113-14, 179; *see also* DJ Transcript, May 13, 2020, pg. 69.

13.     On September 14, 2019, Plaintiffs Hubay, Dorantes and Herrick resigned from further association with the MSTM. *See* Plaintiffs' Declaratory Judgment Hearing Exhibit 11; *see also* DJ Transcript, May 8, 2020, pg. 94, 196, 233; *see also* ECF No. 24, Answer to Plaintiffs' Complaint, ¶ 12.

14.    These resignations occurred as a result of an unscheduled protest at the Marine Commandant's house that took place during a scheduled trip to Washington, DC from September 10-14, 2019 (the "DC Trip"). *See* Plaintiffs' Declaratory Judgment Hearing Exhibit 11; *see also* DJ Transcript, May 8, 2020, pg. 94-97; 190-92; 233-34.   A copy of the event schedule from September 12-14 for the DC trip is attached to Plaintiffs' Complaint as Exhibit A.

15.    During the DC Trip, Defendant Mendez "added" to the planned events schedule by organizing a protest in front of the house of the Commandant of the United States Marine Corps on September 14, 2019. *See* Plaintiffs' Declaratory Judgment Hearing Exhibits 7, 11; *see also* DJ Transcript, May 8, 2020, pg. 94-97; 190-92; 233-34.

16.    Plaintiffs Hubay and Dorantes expressed their disagreement with this unplanned protest, and other volunteers within the MSTM expressed concern that such a protest would be "dangerous."  In addition to being an unsafe location, Plaintiffs had concerns for retaliation insofar as certain volunteers and supporters with the MSTM are either on active duty in the military or have spouses that are on active duty. *See* DJ Transcript, May 8, 2020, pg. 91-94, 191-92.

17.    Nonetheless, Defendants Mendez and Heal proceeded with the protest and engaged in abusive and confrontational conduct at the house of the USMC Commandant on September 14, 2019.  During this livestreamed video, Defendant Mendez made threats of harm directed to the United States Marine Corps Commandant. *See* DJ Transcript, May 8, 2020, pg. 96-98; *see also* Plaintiffs' Declaratory Judgment Exhibits 11 and 26 ("I deserve to be Commandant more than you. [...] I will come for you!").

18.    Plaintiffs Hubay, Dorantes and Herrick resigned later that same day after this unscheduled protest was completed. *See* Plaintiffs' Declaratory Judgment Exhibit 11.

19.    In connection with their written resignation, Plaintiffs Hubay, Dorantes and Herrick each specifically stated to Defendant MSTM and its remaining members, including Defendants Mendez and Heal, that:  "I withdraw my consent for any and all pictures or use of my name regarding the Movement and I decline consent for further use of my photos or name in any fashion." *Please see* Plaintiffs' Declaratory Judgment Exhibits 11 and 53; *see also* DJ Transcript, May 8, 2020, pg. 94-97; 190-92; 233-34.

20.    In response to the registration by Plaintiff Hubay, Defendant Mendez responded with a message stating: "okay that's your [sic] right. I'll respect it." *Please see* Plaintiffs' Declaratory Judgment Exhibit 11.

C.    **MSTM Did Not Request or Coordinate to Obtain Ownership of any Photographs Taken During the DC Trip.**

21.    Leading up to the DC Trip, Ms. Hubay, acting as the MSTM Executive Director of Operations & Communications, contacted a cinematographer named Gwen Schroeder to shoot video and take photographs for use by MSTM in promotional materials. *See* DJ Transcript, May 8, 2020, pg. 86-87.

22.    MSTM never acquired any ownership or copyright interests in the video and photographs taken by Ms. Schroeder because, although she was given free lodging during the DC Trip, she did not sign a written agreement with MSTM and did not receive any compensation for her work product. *See* DJ Transcript, May 8, 2020, pg. 86-87, 112, 183; see also *See* DJ Transcript, May 13, 2020, pg. 66-69.

23.    MSTM also did not and does claim rights in ownership to photographs taken by other volunteers who were provided housing during the DC Trip, including those of Sandra Denice Newton. *See* DJ Transcript, May 13, 2020, pg. 14, 65.

24.     Mr. Losieniecki did not enter into any written agreement with MSTM concerning the provision of photography services for, or the transfer or license of photographs and associated copyright interests to MSTM. *See* DJ Transcript, May 13, 2020, pg. 62; *see also* DJ Transcript, May 8, 2020, pg. 19-20, 183-84.

25.     There are no written communications from Mr. Losieniecki wherein he states or otherwise indicates that he would be acting as a photographer for MSTM when he took photographs during the DC Trip. *See* DJ Transcript, May 8, 2020, pg. 19-20, 183-84; *see also* DJ Transcript, May 13, 2020, pg. 50-51, 62.

26.     There are no written communications between Mr. Losieniecki and any representative of MSTM stating or indicating that he would be acting as a photographer for MSTM when he took photographs during the DC Trip. *See* DJ Transcript, May 8, 2020, pg. 19-20, 183-84; *see also* DJ Transcript, May 13, 2020, pg. 50-51, 62.

27.     While planning the DC Trip, Plaintiff Losieniecki was never identified as the official MSTM photographer in any Senior Leadership meeting minutes. *See* DJ Transcript, May 8, 2020, pg. 177-78, 184-85.

D.      **Plaintiffs Did Not Consent to Indefinite Use by MSTM of Plaintiffs' Likenesses and Names.**

28.     As the Executive Director of Operations & Communications, Plaintiff Hubay drafted a Consent to Release of Information form to be executed by volunteers that talk to news outlets on behalf of MSTM and to allow MSTM to advocate on their behalf and share their personal stories. *See* DJ Transcript, May 8, 2020, pg. 113.

29.      It was not a requirement for attendance during the DC Trip that each volunteer or participant execute a Consent to Release of Information form, and Plaintiffs Hubay, Dorantes,

Herrick and Losieniecki never executed any consent forms for MSTM. *See* DJ Transcript May 8, 2020, pg. 19, 28, 99, 188. The absence of this requirement was confirmed by Sandra Denice Newton, a non-party witness. *See* DJ Transcript, May 13, 2020, pg. 10-11.

30.     Even if signed, the Consent to Release of Information form shown at Defendants' Declaratory Judgment Hearing Exhibit 34 does not provide for any language releasing the signatory's likeness or photos for use by MSTM. *See* DJ Transcript, May 8, 2020, pg. 111, 113; *see also* Plaintiffs' Declaratory Judgment Hearing Exhibit 25l.

31.     MSTM previously developed a more detailed consent form that was specifically intended to release the use of a signatory's likeness in connection with specific media events. *See* DJ Transcript, May 13, 2020, pg. 177-78. Additionally, the more detailed consent form that references particular use were not provided to certain participants of the DC Trip until after the trip. *See* DJ Transcript, May 13, 2020, pg. 162-63, 170-71. Defendants do not assert that Plaintiffs executed this more detailed form.

**E.      Plaintiff Losieniecki Authored Photographs During the DC Trip for Which He Obtained a Copyright Registration.**

32.     During the trip, Mr. Losieniecki took numerous photographs for the personal benefit of his wife. In particular, Mr. Losieniecki authored and took 817 photographs on September 13, 2019 and 557 photographs on September 12, 2019 (the "Losieniecki Photographs"). *See* DJ Transcript, May 8, 2020, pg. 12-13; *see also* Plaintiffs' Declaratory Judgment Hearing Exhibit 32.

33.     Plaintiff Losieniecki obtained a copyright registration identified as VA 2-173-194 effective October 9, 2019 titled "DC 2019" for the Registered Photographs. *See* Defendants' Declaratory Judgment Hearing Exhibit 1.  This registration included the following, as identified by their Exhibit No. to Plaintiffs' Complaint:

| No. | Title | Publication Date | Identified Plaintiffs | Exhibit No. |
|---|---|---|---|---|
| 1. | IMG_8504 | September 14, 2019 | Hubay | B |
| 2. | IMG_8870 | September 16, 2019 | Hubay; Dorantes | C |
| 3. | IMG_8591 | September 19, 2019 | Hubay | D |
| 4. | IMG_8430 | September 19, 2019 | Hubay | E |
| 5. | IMG_8548 | September 20, 2019 | Hubay | F |
| 6. | IMG_8586 | September 19, 2019 | Hubay | G |
| 7. | IMG_8508 | September 19, 2019 | Hubay | H |
| 8. | IMG_8433 | September 19, 2019 | Hubay | I |
| 9. | IMG_8804 | September 19, 2019 | Hubay; Dorantes | J |
| 10. | IMG_9017 | September 16, 2019 | | K |
| 11. | IMG_8462 | September 16, 2019 | | L |
| 12. | IMG_8888 | September 19, 2019 | Hubay; Dorantes | M |
| 13. | IMG_8604 | September 20, 2019 | | N |
| 14. | IMG_8536 | September 20, 2019 | Hubay | O |
| 15. | IMG_8437 | September 20, 2019 | | P |
| 16. | IMG_8501 | September 20, 2019 | Hubay | Q |
| 17. | IMG_8638 | September 20, 2019 | | R |
| 18. | IMG_8816 | September 20, 2019 | Hubay; Dorantes | S |
| 19. | IMG_8752 | September 20, 2019 | Hubay | T |
| 20. | IMG_8620 | September 20, 2019 | Hubay | U |
| 21. | IMG_8708 | September 20, 2019 | | V |
| 22. | IMG_8688 | September 20, 2019 | Hubay | W |
| 23. | IMG_8645 | September 20, 2019 | | E |
| 24. | IMG_8421 | September 20, 2019 | | Y |
| 25. | IMG_8907 | September 20, 2019 | Hubay; Dorantes | Z |
| 26. | IMG_8644 | September 20, 2019 | | AA |

*See* DJ Transcript, May 8, 2020, pg. 12. Defendants' Declaratory Judgment Hearing Exhibit 2.

F.     **Defendants Copied, Distributed and Published the Registered Photographs Without Authorization and also Continued to Use the Likenesses and Names of Plaintiffs.**

34.    Twenty-six of the Registered Photographs have been infringed by Defendants' unauthorized copying, publication and distribution to third parties without Mr. Losieniecki's permission. *See* DJ Transcript, May 8, 2020, pg. 12-13, 100-01; *see also* Plaintiffs' Declaratory Judgment Hearing Exhibits 5, 6, and 12.

35.    At the time of the filing of the Complaint, such infringements were identified at Table 2 and Exhibits BB, CC and GGG-TTT of Plaintiffs' Complaint, as follows:

| Published Location | Abbreviation | Published Photographs[5] | Responsible Defendants | Exhibit |
|---|---|---|---|---|
| MSTM Website https://www.endmst.org/ (cover slideshow) | MSTM-WEB | 8504, 8591, 8708, 8870 | All | GGG |
| Defendant Mendez's personal Instagram > inside the story titled "Fight" @janelle_mendez | JMM-INSTA-FIGHT | 8870, 8591, 8508, 8433, 8804 | Mendez, MSTM | HHH |
| Defendant Mendez's personal Instagram @janelle_mendez | JMM-INSTA | 8504, 8870, 8430, 8548, 8586 | Mendez, MSTM | III |
| Defendant Mendez political candidate Facebook page | JMM-FB-PC | 8870, 8591, 8430, 8856, 8504 | Mendez, MSTM | JJJ |
| Defendant Mendez personal Facebook page, including her album "#MSTMTakesDC | JMM-FB-PER | 8504, 8870, 8548, 8586, 8433, 9017, 8462, 8645, 8644 | Mendez, MSTM | KKK |
| MSTM Official Instagram @militarysexualtrauma | MSTM-INSTA | 8604 | All | LLL |

---

[5] The Exhibits identified with the Published Photographs in the first Table also include the corresponding copies of these photographs as published by the Defendants in the identified locations.

| Published Location | Abbreviation | Published Photographs[5] | Responsible Defendants | Exhibit |
|---|---|---|---|---|
| MSTM official Instagram > inside the story titled "Washington DC" @militarysexualtrauma | MSTM-INSTA-DC | 8504, 8870, 8591, 8430, 8433, 8508, 8586 | All | MMM |
| Defendant Heal's personal Facebook album titled "#MSTMTakesDC" | PH-FB-ALBM | 8591, 8430, 8548, 8804, 8888, 8604, 8536, 8437, 8501, 8638, 8816, 8620, 8708, 8688, 8645, 8421, 8907, 8508, | All | NNN |
| MSTM Official Facebook Page | MSTM-FB | 8508 | All | OOO |
| Defendant Heal's personal Instagram at "#endMST" story and on regular page @therealpamelaheal | PH-INSTA | 8816 | All | PPP |
| Defendant Heal's personal Facebook page outside of PH-FB-ALBM @therealpamelaheal | PH-FB | 8421 | All | QQQ |
| Defendant Mendez's personal Facebook cover photo | JMM-FB-CVR | 8870 | Mendez, MSTM | RRR |
| Defendant Heal's personal Facebook Cover Photo | PH-FB-CVR | 8888 | All | SSS |
| Email sent by Defendant Mendez from MSTM with noted photographs and asking people to buy tickets for "next year's event." | MSTM-EMAIL | 8504, 8870, 8804, 8548 | All | TTT |

*See* Plaintiffs' Declaratory Judgment Hearing Exhibits 3, 4 and 6; *see also* DJ Transcript, May 8, 2020, pg. 20, 103.

36.     At the time of the filing of the Complaint, Defendants also were continuing to use the names and likenesses of Plaintiffs, as identified at Table 3 and Exhibits EE – FFF of Plaintiffs' Complaint. They are identified as follows:

| No. | Title | Published Location | Identified Plaintiffs | Exhibit No. |
|-----|-------|--------------------|-----------------------|-------------|
| 1. | IMG-01 | JMM-INSTA-FIGHT | Hubay | EE |
| 2. | IMG_02 | MSTM's Official Twitter @MSTMovement | Hubay | FF |
| 3. | IMG_03 | Defendant Mendez's Personal Twitter @janelle_marina | Hubay | GG |
| 4. | McSally Letter | MSTM-WEB EndMST.org/mcsally | Hubay; Dorantes | HH |
| 5. | IMG_04 | MSTM-INSTA | Dorantes | II |
| 6. | IMG_05 | JMM-INSTA-FIGHT | Hubay | JJ |
| 7. | VID_2 | PH-INSTA | Hubay | KK[6] |
| 8. | Commandant Request | MSTM-WEB EndMST.org/request_usmc | Hubay | LL |
| 9. | IMG_06 | MSTM-INSTA | Hubay | MM |
| 10. | Screenshot of McSally Letter (use of signatures) | JMM-INSTA-FIGHT | Hubay; Dorantes | NN |
| 11. | VID-03 | PH-INSTA | Hubay | OO |
| 12. | IMG_07 | MSTM-INSTA | Hubay | PP |
| 13. | TGD_1 | JMM-INSTA-FIGHT | Hubay | QQ |
| 14. | IMG_08 | MSTM-INSTA / PH-INSTA | Hubay | RR/OO |
| 15. | VID_04 | MSTM-INSTA / PH-INSTA | Hubay; Dorantes | SS/OO |
| 16. | TGD_02 | JMM-INSTA-FIGHT | Hubay | TT |
| 17. | IMG_09 | JMM-INSTA-FIGHT | Hubay | UU |
| 18. | VID_05 | PH-INSTA | Hubay; Dorantes | VV |
| 19. | IMG_10 | MSTM-INSTA / PH-STORY | Dorantes | WW/BB |
| 20. | IMG_11 | PH-INSTA | Hubay; Dorantes | XX |
| 21. | IMG_12 | MSTM-INSTA | Hubay | YY |

---

[6] The attached Exhibits for VID_2 – VID_8 show a screen shot of the initial frame show in the respective video; the likeness and/or name of the Identified Plaintiffs are shown in the video.

| No. | Title | Published Location | Identified Plaintiffs | Exhibit No. |
|-----|-------|--------------------|-----------------------|-------------|
| 22. | IMG_13 | PH-INSTA | Dorantes | ZZ |
| 23. | IMG_14 | MSTM-INSTA | Hubay | AAA |
| 24. | VID_06 | PH-INSTA | Hubay | BBB |
| 25. | IMG_16 | MSTM-INSTA / MM-INSTA | Hubay; Dorantes | CCC/CC |
| 26. | VID_07 | PH-INSTA | Dorantes | DDD |
| 27. | IMG_17 | MSTM-INSTA / MM-INSTA | Hubay; Dorantes | EEE/CC |
| 28. | VID_08 | PH-INSTA | Dorantes | FFF |

*See* DJ Transcript, May 8, 2020, pg. 100-01; Plaintiffs' Declaratory Judgment Hearing Exhibit 5.

37.     As of the date the hearings in this action, a number of the Registered Photographs, together with likenesses and names of the Plaintiffs, were still being distributed and published by the Defendants. *See* Plaintiffs' Declaratory Judgment Hearing Exhibits 12 and 30; *see also* DJ Transcript, May 8, 2020, pg. 22-24, 215-217.

38.     Defendants copied, distributed and published the Registered Photographs, including the likenesses and/or names of Plaintiffs Losieniecki, Hubay and Dorantes, for purposes of promoting and fundraising for MSTM. *See, e.g.*, Complaint, Ex. TTT (specific fundraising request).  More generally, all postings on the MSTM website and social media pages benefitted the mission and fundraising efforts of MSTM, as did the posting on individual social media sites. *See* DJ Transcript, May 13, 2020, pg. 111. *See also* Plaintiffs' Declaratory Judgment Exhibits 27 and 28.  Further, Defendant Mendez testified that she sought to copyright the photographs (many of which contain likenesses of Plaintiffs Hubay and Dorantes) for marketing purposes. *See* DJ Transcript, May 13, 2020, pg. 111.

**G.      Defendants Copied Plaintiffs' Photographs Without Permission.**

39.     On the evening of September 13, 2019, Defendant Mendez, without permission or authorization from Plaintiff Losieniecki, copied and downloaded photographs from one (1) of the

SIM cards from Mr. Losieniecki's camera, which included a portion of the Losieniecki Photographs. *See* DJ Transcript, May 8, 2020, pg. 20-22, 103 – 105.

40.     In particular, Defendant Mendez requested if she could see and review the photographs that had been taken by Mr. Losieniecki over the course of the trip. Mr. Losieniecki consented, and they began reviewing the photographs together on Mr. Losieniecki's computer. *See* DJ Transcript, May 8, 2020, pg. 20-22, 103 – 105.

41.     At some point, Mr. Losieniecki stepped outside to speak to his wife, Ms. Hubay, and during that time period Defendant Mendez removed one SIM card from Mr. Losieniecki's computer and took the other SIM card laying next to his computer downstairs and proceeded to download and/or copy photographs from at least one of the SIM cards. *See* DJ Transcript, May 8, 2020, pg. 20-22, 103 – 105, 186.

42.     Mr. Losieniecki realized that the SIM cards were missing and requested that his wife, Ms. Hubay, retrieve them from Defendant Mendez. *See* DJ Transcript, May 8, 2020, pg. 20-22, 103 – 105, 186.

43.     Defendant Mendez, at no time, asked for permission or authorization to download, copy, publish or distribute any of the Losieniecki Photographs, and no such permission or authorization was given by Mr. Losieniecki. *See* DJ Transcript May 8, 2020, pg. 20-22, 103 – 105, 186. When he became aware of the postings of the Registered Photographs by Defendants, he provided notice to them of his ownership rights and requested that Defendants stop posting his photographs.  Defendants' Declaratory Judgment Hearing Exhibit 10.

44.     Mr. Losieniecki is the sole author of all of the Losieniecki Photographs, including the Registered Photographs, and of all the Losieniecki Photographs located on the aforementioned SIM cards. *See* DJ Transcript, May 8, 2020, pg. 18-20.

### H.      Plaintiff Losieniecki Was Not an Employee of MSTM.

45.      Plaintiff Losieniecki accompanied his wife, Plaintiff Hubay, on the DC Trip in order to support the volunteer efforts of Ms. Hubay.  Plaintiff Losieniecki did not have a recognized volunteer position with the MSTM and had no involvement with the organization prior to the DC Trip. *See* DJ Transcript, May 8, 2020, pg. 18-20, 34, 68.

46.      Defendants have provided no evidence to support their contention that Plaintiff Losieniecki was an "official" volunteer and/or employee of MSTM prior to the DC Trip due to alleged "counterintelligence work" he did for the organization. As such, this contention is not credible. *See* DJ Transcript, May 8, 2020, 150, 152-53.[7]

47.      Each "official" volunteer of MSTM was required to complete an on-boarding form. Mr. Losieniecki did not complete such a form. *See* DJ Transcript, May 8, 2020, pg. 228-30; *See* DJ Transcript, May 13, 2020, pg. 159, 161. Documents produced by Defendants show such a form for Plaintiff Herrick was retained by MSTM. *See* Plaintiffs' Declaratory Judgment Hearing Exhibit 59.

48.      Additionally, in order to boost membership numbers for the fledgling MSTM organization, Plaintiff Hubay entered the personal contact information of her husband, Plaintiff Losieniecki, into the NationBuilder site used by MSTM leadership to organize their volunteer membership email list without Plaintiff Losieniecki's knowledge. *See* DJ Transcript, May 8, 2020, pg. 80-81.

---

[7] There is no written corroboration that Plaintiff Losieniecki was involved in any in such actions, and no such assertion was made until the hearing.

49.     In order to be excused from his university course work and attend the DC Trip, Plaintiff Losieniecki was provided with an excusal letter from MSTM that was drafted and signed by Defendant Mendez and sent to Plaintiff Hubay. *See* ECF No. 37-1, ¶ 9.

50.     Before providing this letter to his professors, Plaintiff Losieniecki did not carefully review the content of the MSTM excusal letter, and he did not notice that it identified him as the "photographer on duty." *See* DJ Transcript, May 8, 2020, pg. 25-27.

51.     While Plaintiff Hubay prepared excuse letters for other MSTM volunteers, Defendant Mendez revised the general substance of these prior letters and drafted the language specific to Plaintiff Losieniecki. *See* DJ Transcript, May 13, 2020, pg. 70-71; *see also* May 8, 2020, pg. 158.

52.     Senior Leadership members, including Plaintiffs Hubay and Dorantes, were provided lodging for the DC Trip and were required to agree to the "house rules" for each accommodation. These rules were created for each lodging location to limit MSTM's liability in case of property damage at the locations. *See* DJ Transcript, May 8, 2020, pg. 111-12, 194-95; *see also* Plaintiffs' Declaratory Judgment Hearing Exhibit 31. These rules do not include any (i) assignment of rights to photographs, (ii) language concerning a "work made for hire" relationship, or (iii) consent as to use of one's likeness or name.

53.     Plaintiff Losieniecki shared a bed with his wife, Plaintiff Hubay, while on the DC Trip. At no time was Plaintiff Losieniecki told that he was being provided lodging in exchange for taking photographs on behalf of MSTM during the DC Trip. *See* DJ Transcript, May 8, 2020, pg. 27-28.   Defendants have not sought or requested ownership of photographs taken by other volunteers at the DC Trip, including those such as Ms. Newton, who also received free housing.

DJ Transcript, May 13, 2020, pg. 14 (Ms. Newton testimony as to her and others taking photos) and 66 (Defendant Mendez testimony as to no claim to photos of others).

54.     Contrary to statements made by Defendants in their pleadings, the two camera SIM cards that were used by Mr. Losieniecki were not purchased by MSTM or Defendants Mendez and Heal. *See* DJ Transcript, May 8, 2020, pg. 28-29.  Instead, they were purchased and previously used by Defendant Hubay. *See* DJ Transcript, May 8, 2020, pg. 17, 29, 118; *see also* Plaintiffs' Declaratory Judgment Hearing Exhibit 32.

55.     Contrary to statements made by Defendants in their pleadings, a one hundred and twenty-nine dollar ($129) payment made from Defendant Mendez to Plaintiff Hubay was a reimbursement for two (2) cartridges of ink and groceries that Ms. Hubay had purchased during the D.C. Trip. *See* DJ Transcript, May 8, 2020, pg. 119; *see also* Plaintiffs' Declaratory Judgment Hearing Exhibit 57.

56.     Mr. Losieniecki had no skill in taking photographs and attended the D.C. Trip solely to be supportive of his wife, Ms. Hubay, and her interests. *See* DJ Transcript, May 8, 2020, pg. 18-20, 34, 68.

57.     The camera and SIM cards used by Mr. Losieniecki to take photographs during the D.C. Trip belonged to Ms. Hubay, and the SIM cards had prior personal photographs on them before being deleted for use during the D.C. Trip. No other photography equipment was provided by MSTM or Defendants Mendez and Heal. *See* DJ Transcript, May 8, 2020, pg. 17, 117-18.

58.     Plaintiff Losieniecki was never an "official" volunteer of MSTM, did not provide any services to MSTM, and had no relationship with MSTM other than his connection to his wife, Plaintiff Hubay. When Plaintiffs Hubay, Dorantes, and Herrick resigned from MSTM on

September 14, 2019 Plaintiff Losieniecki did not publicly resign as he was never affiliated with the organization. *See* DJ Transcript, May 8, 2020, pg. 117.

59.     At no time before, during or after the DC Trip did Defendants Mendez, Heal or MSTM have the right to assign additional tasks and/or projects to benefit MSTM to Plaintiff Losieniecki, and Defendants have provided no evidence to support such a claim.

60.     At no time before, during or after the DC Trip did Defendants Mendez, Heal or MSTM have discretion over when and how long Plaintiff Losieniecki would take photographs, and Defendants have provided no evidence to support such a claim. Additionally, Defendants did not direct Plaintiff Losieniecki's work. See DJ Transcript, May 8, 2020, pg. 17-18.

61.     Plaintiff Losieniecki was never compensated for any of the photographs he took during the DC Trip and never intended to profit from the photographs taken at the DC Trip. *See* DJ Transcript, May 8, 2020, pg. 20, 54. Furthermore, to the extent that Plaintiff Losieniecki received any alleged recognizable compensation – in the form of lodging donated by a third party - for the photographs taken during the DC Trip, this exchange created – at best – an oral independent contractor relationship.

62.     Plaintiff Losieniecki is not a professional photographer, and Defendants have offered no proof that Plaintiff Losieniecki is regularly engaged and paid as a photographer. *See* DJ Transcript, May 8, 2020, pg. 10-11.

63.     Photography is not a "regular business" for MSTM; indeed, MSTM is not a business. *See* Defendants' Declaratory Judgment Hearing Exhibit 9.

64.     MSTM neither provided any benefits nor issued any tax forms to Plaintiff Losieniecki for the alleged compensation received from MSTM.  *See* DJ Transcript, May 8, 2020, pg. 18-20; *see also* DJ Transcript, May 13, 2020, pg. 61.

65.     As such, Plaintiff Losieniecki was not an employee of MSTM either before, during or after the DC Trip.

**I.      Plaintiffs Did Not Delete MSTM Records.**

66.     After resigning from MSTM, Plaintiffs Hubay, Dorantes, and Herrick attempted to remove only their own personally identifiable information from the MSTM Google Drive in order to disassociate themselves with the organization. *See* DJ Transcript, May 8, 2020, pg. 171-72, 206.

67.     At no time did Plaintiffs Hubay, Dorantes, and Herrick remove any MSTM HR files or signed Consent to Release of Information forms from the MSTM Google Drive.

68.     Defendants have provided no evidence to support their allegation that Plaintiffs Hubay, Dorantes, and Herrick removed any MSTM documents or information, including any signed Consent to Release of Information forms for MSTM volunteers subsequent to their resignation on September 14, 2019. As such, this contention is not credible. *See* DJ Transcript, May 13, 2020, pg. 45, 144.

69.     Defendants did not coordinate any forensic review of the MSTM Google Drive in order to confirm any file deletions. *See* DJ Transcript, May 13, 2020, pg. 45, 144. Defendants expressed a concern for the costs of such a review but provided no information on efforts to secure a quote or estimate.[8]

70.     Further, Defendant Mendez stated to Plaintiff Herrick that 90% of MSTM files had been located at of September 23, 2019. *See* DJ Transcript, May 13, 2020, pg. 43.

---

[8] To the extent that Defendants' assertion of file deletions impacts the Court's analysis in any way, Plaintiffs are willing to pay a portion of the costs for a forensic review of the MSTM Google Drive.

71.     Despite Defendants' allegations of deletion, files produced by Defendants in this litigation include records of Plaintiffs Losieniecki and Herrick and consent forms signed by Lisa Nolasco. *See* Plaintiffs' Declaratory Judgment Hearing Exhibits 25l and 59.

**J.     The Testimony of Defendant Mendez Is Not Credible.**

72.     Defendants have provided the Court with various conflicting and changing claims and theories regarding the validity of their copyright claim from the beginning of this action. A timeline of Defendant Mendez's conflicting assertions regarding the status of Plaintiff Losieniecki and his photographs is stated below:

a.   September 18, 2019: MSTM sends a "Notice to Cease and Desist" to Plaintiffs Hubay, Dorantes, and Herrick. Regarding the photographs at issue there is: 1) no mention of payment for the photographs; 2) an allegation that one (1) SIM card was handed to Defendant Mendez and not purchased; 3) a reference to the fact that the photographs were taken on public property and that MSTM had "signed consent forms" from Plaintiffs Hubay, Dorantes, and Herrick; and 4) no mention of Plaintiff Losieniecki's "employment" with MSTM. The letter indicates that Plaintiffs were volunteers and were provided housing for the D.C. Trip. *Please see* Plaintiffs' Declaratory Judgment Hearing Exhibit 23a.

b.   Defendants were advised of Mr. Losieniecki's copyright of the photographs and that no work made for hire agreement existed on October 3, 2019. *Please see* DJ Transcript, May 13, 2020, pg. 43; *see* Plaintiffs' Declaratory Judgment Hearing Exhibit 24.

c.   Defendant Mendez corresponds with Attorney Oberdick on October 4, 2019 regarding Plaintiffs' alleged infractions and the photographs at issue. Defendants

state that Plaintiff Losieniecki gave "verbal consent … that all photos taken by [him] during his stay in Washington, D.C. were to be the property of MSTM." Furthermore, this is the first time that payment in the form of "staff lodging" in exchange for Plaintiff Losieniecki's "volunteer services" is discussed. *Please see* Plaintiffs' Declaratory Judgment Hearing Exhibit 25p.

d.  October 8, 2019: Defendant Mendez applies for a copyright registration for the photographs at issue and originally indicates that MSTM was the author of photographs (while she is the claimant) and that the photographs were a "work made for hire". *Please see* Plaintiffs' Declaratory Judgment Hearing Exhibit 33.

e.  October 31, 2019: Email correspondence from Defendant Mendez to the United States Copyright Office indicates the assertion of Defendant Mendez that MSTM "purchased 2 SD cards full of photos" as the basis for MSTM's ownership and that "because we purchased the SDs which are real property we do not need a written agreement". *Please see* Plaintiffs' Declaratory Judgment Hearing Exhibit 33.

f.  November 1, 2019: Email exchange between the United States Copyright Office to Defendant Mendez indicating that there are issues with her copyright application and discussing authorship and work made for hire status and questioning how the copyright for the photos was legally transferred. Defendant Mendez now alleges to the United States Copyright Office that Plaintiff Losieniecki was a "registered volunteer" who took photos on behalf of MSTM, without explaining whether a "registered volunteer" is an independent contractor who was paid for the photographs or an employee.  In response, the Copyright Office indicates that "it appears that the photographs are 'works made for hire' and MSTM should be

named as both the author and the claimant." *Please see* Plaintiffs' Declaratory Judgment Hearing Exhibit 33. This determination made by the United States Copyright Office is not legally determinative and was based on false information provided to the United States Copyright Office that has not been corrected (specifically, no payment was made to Plaintiff Losieniecki for the camera cards). Importantly, the examiner never identifies Plaintiff Losieniecki as an employee of MSTM and leaves open work made for hire status as an independent contractor.

g. January 2, 2020: Defendants file a Motion to Set Aside Plaintiffs' Default Judgment. In the Affidavit filed on behalf of Defendant Mendez she indicates that she paid Plaintiff Hubay $129.00 via Facebook cash transfer on September 13, 2019 for the purchase of two (2) SIM cards that contained the photographs at issue. Defendant Mendez also alleges that Plaintiff Losieniecki was an "official volunteer" and was provided with staff lodging "at MSTM's expense for his services." *Please see* ECF No. 17-2.  Defendants also asserted that they bought two blank cards for use by Mr. Losienieki and that Defendants continue to possess the SIM cards he used to take the photographs.

h. In Plaintiffs' Motion for Preliminary Injunction, an unblocked Facebook communication between Plaintiffs Hubay and Defendant Mendez was attached as an Exhibit. This communication confirms that the $129 payment related to groceries and printer ink. *See* ECF No. 36-1.  *See also* Plaintiffs' Declaratory Judgment Exhibit 57.

i. In subsequent correspondence, Plaintiffs' counsel asked if the claim to payment of $129 for the camera cards was going to be withdrawn.  In response, Defendants'

counsel stated that Defendants were not withdrawing said allegation as they "believed that it was unnecessary[.]" *See* Correspondence between Plaintiffs' counsel and Defendants' counsel dated March 11, 2020 and March 12, 2020 and attached hereto as Exhibits A and B, respectively.

j.   An expert analysis by bit-x-bit, LLC confirms that Mr. Losieniecki used older SIM cards for the photographs and that he continues to possess the original cards. *Please see* Plaintiffs' Declaratory Judgment Hearing Exhibit 32.  Thus, Defendants falsely claimed that they either (i) purchased new cards for him, or (ii) bought the cards from him. This argument was not abandoned by Defendants until Plaintiffs obtained a forensic review of the SIM cards.

k.   It was only during her testimony at the Declaratory Judgment proceedings that Defendant Mendez stated that she misremembered what the $129 payment to Plaintiff Hubay was for and had made a "mistake." *Please see* DJ Transcript, May 13, 2020, pg. 63-64, 100. Defendant Mendez also testified, without forensic corroboration or other common sense explanation that she could not access her prior Facebook messages because she no longer had the phone on which the message were made.  *Id*. at 63. It is unclear how she is currently able to access the same Facebook account on other electronic devices without accessing prior messages, and Plaintiffs submit that this "explanation" is contrived. *See also* Plaintiffs' Declaratory Judgment Exhibit 42

73.   The testimony provided by Janelle Marina Mendez during the Declaratory Judgment proceeding is found to be not credible because of the above inconsistencies and contradictions and, further, because:

a. Defendant Mendez testified to having memory issues associated with her Post Traumatic Stress Disorder. *Please see* DJ Transcript, May 13, 2020, pg. 100.

b. In Defendants' Motion for Preliminary Injunction, now converted to a Motion for Declaratory Judgment, Defendants alleged that Defendant Mendez "drafted a school excusal letter on behalf of Plaintiff, Losieniecki, naming him the photographer on duty for Defendant, MSTM." However, Defendant Mendez then testified that she did not draft the school excusal letter for Plaintiff Losieniecki and instead testified that she "went in and made whatever edits I wanted to make" and then approved it. *Please see* DJ Transcript, May 13, 2020, pg. 70-71.

c. Defendant Mendez testified that Plaintiff Hubay was actively publicizing the lawsuit and providing information to be posted in social media groups geared towards female marines. *Please see* DJ Transcript, May 13, 2020, pg. 117. However, Defendant Mendez was actively and intentionally orchestrating the leak of information regarding the lawsuit into these same female marines' groups. Indeed, Defendant Mendez admitted that she wanted to post information into these groups "anonymously" as she did not want Plaintiffs to know she was providing the information. *Please see* Declaration of Casandra Johnson-Ralph dated June 8, 2020 and attached hereto as Exhibit C.[9]  Defendant Mendez otherwise sought to draw attention to the lawsuit in other postings.  Defendants' Declaratory Judgment Hearing Exhibits 18 and 20.

---

[9] This testimony was not available at the time of the hearing and Plaintiffs' move to open or enlarge the record to receive this additional evidence.  Plaintiffs also are open to presenting the testimony of Ms. Johnson-Ralph as a live witness so that cross-examination can occur.

d.   Defendants Mendez and Heal otherwise testified, without any documentary support or corroboration that MSTM was being criticize and Defendants were otherwise being harassed online. *See* DJ Transcript, May 13, 2020, pg. 86-87, 139-40. Further, as set forth in Finding of Fact 73(c), such criticisms occurred because Defendants Mendez and Heal drew attention to themselves and MSTM by posting on social media and asking others to do that same. *See* Plaintiffs' Declaratory Judgment Hearing Exhibit 60.

e.   At Paragraph 10 of Defendants' Counterclaim, they allege that Mr. Losieniecki "was provided staff lodging at MSTM's expense for his services." There is no evidence supporting the allegation that MSTM incurred any expense for such lodging, Instead, it was donated. *See* DJ Transcript, May 8, 2020, pg. 55, 77-78.

f.   Ms. Mendez submitted an affidavit for execution by Sandra Denice Newton that contained numerous false statements relating to, *inter alia*, Plaintiff Losieniecki' s role at the DC Trip, consent agreements and silencing of survivors. *See* DJ Transcript, May 13, 2020, pg. 19-24. *See also* Plaintiffs' Declaratory Judgment Exhibits 54 and 55. Defendant Mendez also falsely stated that Plaintiffs initiated the present litigation in order to "profit" on the photographs. *Id*. at 25. *See also* Plaintiffs' Declaratory Judgment Exhibit 56.

g.   Defendants did not, until the time of the hearing, concede that they will no longer use the likenesses and names of the Plaintiffs, but only after months of disputes over such use. *See* DJ Transcript, May 13, 2020, pg. 76, 79. Further, despite testimony by Defendant Mendez at the hearing, Defendants continue to use the Registered Photographs, together with the likenesses/names of Plaintiffs Hubay,

Dorantes and Herrick, as detailed in an email from Plaintiffs' counsel to Defendants' counsel. *See* Correspondence from Plaintiffs' counsel to Defendants' counsel dated May 27, 2020 and attached hereto as Exhibit D.

74.    Based on the findings set forth in Findings of Fact 72 and 73, Defendants infringement of the Registered Photographs was willful. Defendants have, *inter alia*, misrepresented facts to the Copyright Office and this Court concerning the MSTM work made for hire claim and have sought to perpetuate this litigation while only making concessions as to prior false statements and asserted rights to use at the hearing.

75.    Defendants' willful conduct is further evidenced by Defendants' threats of both civil and criminal proceedings against Plaintiffs.  *See* Plaintiffs' Declaratory Judgment Exhibits 23a-e, 25a-p, 37 and 50.

**K.      Defendants' Use of Plaintiffs' Likenesses and Names Have Benefitted Defendants and Put Plaintiffs in a False Light.**

76.    Defendants have and continue to use the Registered Photographs and the likenesses/names of Plaintiffs to promote and obtain fundraising for MSTM. *See* DJ Transcript, May 13, 2020, pg. 111 (testimony by Defendant Mendez that the photographs were copyrighted by MSTM for marketing purposes).[10]  *See also* Findings of Fact 38, *supra*.

---

[10] Defendant Mendez testified that she wanted to copyright the photographs because "every marketing campaign we have, we copyright."  A search of the U.S. Copyright Office database shows that MSTM secured copyrights on written materials in 2020, but nothing before the 2019 registration. *See* https://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?Search_Arg=military+sexual&Search_Code=NALL&PID=IGvfsKREcdWCmut2g9H43ghVjfGT&SEQ=20200609195107&CNT=25&HIST=1

77.     Additionally, Defendants' continued indications that Plaintiffs Hubay and Dorantes remain associated with MSTM falsely connect the Plaintiffs to the protest at the Marine Commandants' house. *See* DJ Transcript, May 8, 2020, pg. 98-99, 197, 214.

78.     By live streaming Defendant Mendez protesting outside of the Marine Corps Commandant's Barracks on September 14, 2019, where targeted and distinct threats were made directed towards the USMC and Commandant, MSTM cultivated a reputation seen as anti-military. *See* DJ Transcript, May 8, 2020, pg. 98-99, 197, 214; *see also* Plaintiffs' Declaratory Judgment Hearing Exhibit 26 ("I will come for you!").

79.     Specifically, Plaintiff Dorantes' husband is currently on active duty in the USMC and is enrolled in an officer training program. The continued use and publication of her name and likeness on the Defendants' website and social media accounts falsely associates her with anti-military sentiment and could risk her military benefits and her family's livelihood. This false association has required Plaintiff Dorantes to disassociate herself with her husband on various social media platforms for fear of retaliation. *See* DJ Transcript, May 8, 2020, pg. 197-99, 207. Plaintiffs Hubay and Herrick testified to similar concerns. *See* DJ Transcript, May 8, 2020, pg. 94-95, 234-35.

80.     Other individuals also resigned and/or disassociated with MSTM after the demonstration at the Commandant's Barracks evidencing the negative reaction to Defendants' violent and threatening protest and conflicts within the organization. *See* DJ Transcript, May 8, 2020, pg. 200.

81.     As such, Defendants' continued use and publication of the likenesses/names of Plaintiffs Hubay and Dorantes puts these Plaintiffs in a false light by conveying that these Plaintiffs remain associated with MSTM and the individual Defendants.

82.     Defendants have testified that they do not seek to use or claim rights in the likenesses and names of Plaintiffs, and that such uses have ceased. *See* DJ Transcript, May 13, 2020, pg. 76-79.  Thus, Defendants have conceded that they do not have rights or consents to use such likenesses and names.

**L.     MSTM Trademarks Do Not Convey Copyright Ownership to MSTM.**

83.     MSTM obtains no rights in the Losieniecki Photographs by virtue of any MSTM trademark.

84.     Defendant MSTM has two (2) New York state trademark registrations for two MSTM logos relating to the following services: "MSTM logo is used to promote MSTMs brand as a non-profit that is working to enact laws to protect victims and survivors of Military Sexual Trauma.  We provide advocacy services to survivors of MST, through awareness and lobbying campaigns." *See* Defendants' Declaratory Judgment Hearing Exhibit 12.  The claimed date of first use of the logos is June 1, 2019.  The logos are described but not depicted in the registration.  *Id*.

85.     Defendant MSTM also filed a federal trademark application for the word mark MILITARY SEXUAL TRAUMA MOVEMENT for the following services: "Promoting public awareness of military sexual trauma; promoting the interests of survivors of military sexual trauma by means of public advocacy; lobbying services, namely, promoting the interests of survivors of military sexual trauma in the field of politics and legislation." *Id*. The claimed date of first use of this mark is June 1, 2019. *Id*. The application was amended to the Supplemental Register on March 25, 2020, and the word "MOVEMENT" is disclaimed. *Id*.

86.     The Supplemental Register is a second trademark register where trademarks can be registered that are not yet eligible for registration on the Principal Register, but may, over time, become an indicator of source. Marks registered on the Supplemental Register, like those

registered on the Principal Register, are protected against conflicting marks in later-filed USPTO applications. However, Supplemental Register registrations do not receive the same legal advantages and presumptions of Principal Register registrations. *See* https://www.uspto.gov/trademark/laws-regulations/how-amend-principal-supplemental-register-1.

87.     Defendants have made no allegation and have introduced no testimony or evidence that Plaintiffs are using any of MSTM's trademarks to convey a false association with MSTM or otherwise confuse supporters of MSTM. Indeed, there is no allegation or evidence that, since Plaintiffs resignation from MSTM, Plaintiffs have used the logos of MSTM in any manner and, aside from this litigation, have used "MILITARY SEXUAL TRAUMA MOVEMENT".

## III.    <u>CONCLUSIONS OF LAW</u>

### A.     <u>Copyright Infringement</u>

1.     "To establish a claim of copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.,* 307 F.3d 197, 206 (3d Cir.2002).

2.     Defendants do not dispute that they copied, distributed and published the Registered Photographs. Instead, they challenge whether Plaintiff Losieniecki owns the copyright to the Registered Photographs. Absent such ownership, Defendants' copying, distribution and publication of the Registered Photographs is not unauthorized.

3.     The issue of copyright ownership by Plaintiff Losieniecki turns on whether Mr. Losieniecki has the legal status as an employee of MSTM when he authored the Registered Photographs – such that the Registered Photographs constitute a "work made for hire" of MSTM.

4.      As Plaintiff, Mr. Losieniecki meets his burden of proof on establishing ownership through his copyright registration (which predated the registration obtained by MSTM); the burden then shifts to Defendants to demonstrate why his registration is invalid. *Autoskill v. National Educational Support Systems*, 994 F. 2d 1476, 1487-89 (10th Cir. 1993).

5.      For the reasons discussed below, the Registered Photographs are owned by Mr. Losieniecki, he was not an employee of MSTM when he took the photographs, and the Photographs are not a "work made for hire" of MSTM.

6.      First, under the findings of fact set forth above, Plaintiff Losieniecki did not agree to provide photography services to MSTM as either an employee or independent contractor.

7.      Nonetheless, Defendants rely solely upon an assertion that a like-kind exchange between Mr. Losieniecki and MSTM occurred, thereby creating an employment relationship. Defendants assert that Mr. Losieniecki was provided lodging during the DC Trip in exchange for his services as a photographer.  Even if Mr. Losieniecki "agreed" to such an exchange, he did not have the status of an employee with MSTM.

8.      Pursuant to the Copyright Act, 17 U.S.C. § 101, in order for intellectual property to be considered a "work made for hire" it must be:

(1)      a work prepared by an employee within the scope of his or her employment; or

(2)      a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, **if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.**

9.      The standard for "specially ordered or commissioned" work is not met in this case.

10.     First, photographs do not fall within the nine listed types of work set forth in the definition of "work made for hire." *Community for Creative Non-Violence, et al. v. Reid*, 490 U.S. 730, 747 n.13 (1989) ("An attempt to add 'photographic or other portrait[s],' S. Rep. No. 94-473, p. 4 (1975), to the list of commissioned works eligible for work for hire status failed after the Register of Copyrights objected [because] photographers are among the most vulnerable and poorly protected of all the beneficiaries of the copyright law....").

11.     Second, Plaintiff Losieniecki and MSTM parties did **not** "expressly agree in a written instrument signed by them that the work shall be considered a work made for hire."  *See* 17 U.S.C. § 101(2).  Defendants do not assert or even imply that any such written agreement existed between Mr. Losieniecki and Defendant MSTM. Indeed, Defendant Mendez insisted that a written agreement was not necessary as MSTM's claim to the copyright was based on Mr. Losieniecki's employment. *See* DJ Transcript, May 13, 2020, pg. 62, 71-72.

12.     Plaintiff Losieniecki also was not an employee of MSTM for the reasons set forth below.

13.     The United States Supreme Court provided direction and instruction on whether an employment relationship exists. However, "payment" alone does not create a written agreement or a "work made for hire" relationship. *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) ("*CCNV*").

14.     In *CCNV*, a homeless charity paid a sculptor named James Earl Reid for a statue that depicted the plight of homeless people for a Christmas pageant in Washington, D.C., called "Third World America." *Id*. at 732. The Supreme Court held that common law agency principles should be applied to decide whether a work is made by an employee or an independent contractor under the Copyright Act. *Id*. at 751.  The Court listed twelve determinative factors, including [1]

the skill required; [2] the source of the instrumentalities and tools; [3] the location of the work; [4] the duration of the relationship between the parties; [5] whether the hiring party has the right to assign additional projects to the hired party; [6] the extent of the hired party's discretion over when and how long to work; [7] the method of payment; [8] the hired party's role in hiring and paying assistants; [9] whether the work is part of the regular business of the hiring party; [10] whether the hiring party is in business; [11] the provision of employee benefits; [12] and the tax treatment of the hired party.  *Id*. at 751-52.

15.     Importantly, the Supreme Court held "[n]o one of these factors is determinative" of whether an individual can be considered an employee. *CCNV*, 490 U.S. at 752. However, "the extent of control the hiring party exercises over the details of the product is not dispositive." *Id*.

16.     Based on a discussion of these factors, the Court held Reid was an independent contractor. Reid supplied his own tools, was without any extensive supervision, and was free in the way he met his deadlines. CCNV could not assign more projects to Reid and paid him in the normal manner independent contractors are done. *CCNV*, 490 U.S. at 752-53.

17.     The United States Copyright Office has provided a Circular that discusses the application of CCNV to potential works made for hire. *See Circular 9*, United States Copyright Office, "Works Made for Hire", Sept. 2012, https://www.copyright.gov/circs/circ09.pdf.

18.     Importantly, Circular 9 notes that "[t]he closer an employment relationship comes to regular, salaried employment, the more likely it is that a work created within the scope of that employment will be a work made for hire." *See id* at pg. 2.

19.     Our research has revealed no case law providing for an exception to the general test set forth in *CCNV* as it pertains to determining whether volunteers are employees or independent contractors when associating with nonprofit organizations. *See Bryson v. Middlefield Volunteer*

*Fire Dep't, Inc.*, 656 F.3d 348, 352 (6th Cir. 2011) (applying *CCNV* factors when determining whether a volunteer could be considered an employee); *see also Todaro v. Township of Union*, 27 F. Supp. 2d 517, 537 (N.J. 1998) ("The Court reiterates its frustration with attempting to apply this employee/independent contractor distinction when trying to distinguish employees from volunteers.").  More directly, there is no legal support for Defendants' position that volunteers in an "all volunteer" organization must be considered as employees under Section 101 of the Copyright Act.

20.     Further, as set forth in Findings of Fact 10, MSTM contemplated that it would have employees in its By-Laws and separately designated employees and volunteers in its fraternization policy.

21.     The factors set forth in *CCNV* are discussed below.[11]

22.     Factor One: Plaintiff Losieniecki is not a professional photographer, and Defendants have offered no proof that Plaintiff Losieniecki is regularly engaged and paid as a photographer. *See* Finding of Fact 56.   This factor does not support an employee relationship.

23.     Factor Two: Plaintiff Losieniecki provided the camera and camera SIM cards for the photographs that he took on the DC trip. *See* Finding of Fact 57.  No supplies were provided by MSTM.  This factor does not support an employee relationship.

24.     Factor Three: The photographs were taken at various public venues in Washington, D.C.  This factor does not support an employee relationship.

---

[11] As Plaintiffs' have provided a valid copyright for the photographs at issue that was certified prior to Defendants' invalid copyright, the burden is on Defendants' to rebut Plaintiffs' copyright and the employment status of Plaintiff Losieniecki. *See Autoskill, Inc. v. Nat'l Educ. Support Sys.*, 994 F.2d 1476, 1488-89 (10th Cir. 1993), *overruled on other grounds*, *TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495, 497 (10th Cir. 2011).

25.     Factor Four: The relationship was of limited duration.  Mr. Losieniecki took photographs over two days in Washington, D.C. *See* Finding of Fact 32. This factor does not support an employee relationship.

26.     Factor Five: Defendants have provided no evidence that, at any time before, during or after the DC Trip, Defendants Mendez, Heal or MSTM had the right to assign additional tasks and/or projects to benefit MSTM to Plaintiff Losieniecki. This factor does not support an employee relationship.

27.     Factor Six: In addition to asserting an exchange of lodging for services, Defendants assert that they had some discretion over when and how long to work. Plaintiff Losieniecki disagrees that Defendants provided any direction; instead, he testified that he either followed the lead of Ms. Schroeder or his own choice. *See* Findings of Fact 60. To the extent that Defendants chose colors to wear or organized certain formations, such actions did not provide direction to Plaintiff Losieniecki on where to take a photograph, what shutter speed or other camera settings to use.  Also, again, "the extent of control the hiring party exercises over the details of the product is not dispositive." *Id*.  This factor does not support an employee relationship.

28.     Factor Seven: Plaintiff Losieniecki did not receive regular pay from MSTM and MSTM asserts that he only received donated lodging in exchange for services (which Plaintiffs deny).  This "quid pro quo" is nowhere confirmed in writing with Plaintiff Losieniecki. *See* Findings of Fact 24, 52-53, 55.  This factor does not support an employee relationship.

29.     Factor Eight: Plaintiff Losieniecki did not testify to having any assistants or the ability to hire assistants.  This factor does not support an employee relationship.

30.     Factor Nine: MSTM is not in the business of photography. *See* Findings of Fact 63. This factor does not support an employee relationship.

31.     Factor Ten: Like in *CCNV*, MSTM is not a business at all. *See* Findings of Fact 63. This factor does not support an employee relationship.

32.     Factor Eleven: Plaintiff Losieniecki did not receive any employee benefits from MSTM and Defendants have provided no evidence to the contrary. *See* Findings of Fact 64. This factor does not support an employee relationship.

33.     Factor Twelve: Plaintiff Losieniecki did not receive any W-2 or other tax forms from MSTM. *See* Findings of Fact 64. This factor does not support an employee relationship.

34.     In sum, therefore, Plaintiff Losieniecki does not meet the legal definition of an employee of MSTM under the Copyright Act.  Even if he received some payment from MSTM and was controlled, in part, by MSTM, the facts in this case are directly analogous to the facts and application of factors in *CCNV*.  This conclusion is consistent with the fact that Gwen Schroeder was not an employee MSTM despite having received free housing from MSTM because she received no other compensation from MSTM and did not have a written agreement with MSTM.[12]

35.     Unlike copyright law, trademark law as such does not restrict the use of a trademark in a photograph. What trademark law does forbid is using a trademark in a way that can cause confusion regarding the affiliation of the trademark owner to the image. If consumers are likely to mistakenly believe that a photograph was sponsored by the trademark owner, then there may be trademark infringement. *See The Rock and Roll Hall of Fame, Inc., et al. v. Gentile Productions, et al.*, 134 F.3d 749, 756 (6th Cir. 1998) (generally discussing the existence of a claimed trademark in a photograph and recognizing that "the touchstone will be the likelihood of customer confusion"

---

[12] MSTM had developed at least two types of media consent forms, as discussed in Findings of Fact 27 above.  Thus, it has knowledge of the need for written confirmation as to the release of rights.  Other volunteer-based organization have required "work made for hire" agreements with volunteers to avoid issues of employee status. *See* https://www.sierraattahoe.com/uploaded/pdf/sierraattahoe-employee-handbook-201819.pdf.  MSTM took no such steps with Mr. Losieniecki, however.

and that "the Lanham Act only prevents him [the photographer] from "using in commerce" his photograph of the trademark in such a way as to cause a "likelihood of confusion" in the market place."). *See also* L. Verbauwhede, *Legal Pitfalls in Taking or Using Photographs of Copyright Material, Trademarks and People*, World Intellectual Property Organization, Section 2.1 – Can you freely take photographs that include trademarks?, https://www.wipo.int/sme/en/documents/ip_photography_fulltext.html#2.1 (last visited June 9, 2020) ("Example: Printing a photograph containing the Nike trademark on sportswear could result in trademark infringement. In fact, by such use it would be assumed that you are trying to appropriate some of the goodwill associated with the Nike trademark. Consumers will presumably think that the fabrics are affiliated with the Nike trademark.").

36.     The existence of any MSTM trademarks in any photographs taken by Mr. Losieniecki does not convey any rights of ownership or copyright interests in those photographs to MSTM.

37.     Mr. Losieniecki's ownership of photographs in which an MSTM trademark is shown does not, by itself, infringe on any trademark rights of MSTM.

38.     Further, MSTM's state trademark registrations provide rights of enforcement within the state of New York only.

39.     Therefore, Plaintiff Robert Losieniecki has the exclusive right to ownership, control, and use of all photographs he took at the September Washington, D.C. trip (the "D.C. Photos"), including the twenty-six (26) photographs identified in Plaintiffs' Complaint and attached as Exhibits A – ZZ thereto (the "Registered Photographs").

40.     The copyright registration owned by Robert Losieniecki identified as VA 2-173-194 and effective October 9, 2019 titled "DC 2019" for the Registered Photographs is valid.

41.     The copyright registration filed on behalf of Military Sexual Trauma Movement, Inc. ("MSTM") identified as VA 2-176-197 and dated October 31, 2019 and titled "Military Sexual Trauma Movement takes on Washington D.C." is invalid and should be stricken from the registration records of the U.S. Copyright Office.  *See Kunkel v. Jasin*, 420 Fed. Appx. 198, 199 (3d Cir. 2011) (copyright registration invalid if based on material misstatement).[13]

42.     MSTM has no right to ownership, control, and use of any photographs taken by Plaintiff Losieniecki during the DC Trip, including the Registered Photographs.

43.     MSTM and Defendants Mendez and Heal do not have an exclusive license to the photographs taken by Plaintiff Losieniecki during the DC Trip, including the Registered Photographs.

44.     The Defendants Janelle Marina Mendez, Pamela Heal, and MSTM infringed upon Mr. Losieniecki's copyright in the Registered Photographs by copying, publishing, and distributing Plaintiff Losieniecki's Registered Photographs without his consent and after notice of Plaintiff Losieniecki's rights.

45.     Defendants acted willfully in connection with their infringement of Plaintiff Losieniecki's copyright. *See Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 507 (1st Cir. 2011) (noting that willful infringement only requires a showing that defendants "knowingly" infringed the copyrighted product).

---

[13] Similarly, the determination of the Copyright Office as to the MSTM registration is not entitled to deference because it was based on false information and is not reasonable. *Krist v. Scholastic, Inc.* 415 F.Supp.3d 514, 525-26 (E.D. Pa. 2019) (recognizing that *Skidmore* deference to determinations of the Copyright Office can apply on a discretionary basis in view of considerations of validity, reasonableness and thoroughness of decision).

### B.   <u>Right to Privacy</u>

46.   Plaintiffs Losieniecki, Hubay and Dorantes seek redress for invasion of their rights of privacy under the common law and based on two separate "wrongs" by defendants: (1) appropriation by MSTM and the individual Defendants for their own use or benefit the name or likeness of Plaintiffs Losieniecki, Hubay and Dorantes, and (2) placing these Plaintiffs in a false light.

47.   Defendants have testified that they do not seek to use or claim rights in the likenesses and names of Plaintiffs, and that all such uses have been removed from the MSTM website and other social media. This testimony appears to render as moot the issue of whether Defendants have consent to use the likenesses and names, as well as the need for prospective relief. However, use of the Plaintiffs' likenesses and names by Defendants continues, and damage issues remain. Thus, Plaintiffs continue to seek declaratory relief as to their right to privacy claims.

### 1.   Choice of Law

48.   As noted above, the Plaintiffs Losieniecki, Hubay and Dorantes currently reside in two (2) separate states: Pennsylvania and Florida. Defendants MSTM and Mendez reside in New York and, at the time of filing this action, Defendant Heal resided in California. This presents an interesting choice of law analysis as to the privacy interests asserted by Plaintiffs.

49.   In a diversity action, a district court must apply the choice of law rules of the forum state in which the court sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941); *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996). Thus, Pennsylvania's choice of law rules govern this case.

50.   The Pennsylvania Supreme Court has adopted a "flexible" approach to choice of law issues in tort cases. *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964). This

approach "permits analysis of the policies and interests underlying the particular issue before the court," in order to "allow the forum to apply the policy of the jurisdiction most intimately concerned with the outcome of [the] particular litigation." *Id*. at 21-22, 203 A.2d at 805-06 (internal quotations and citations omitted).

51.     The Court must determine "the extent to which one state rather than another has demonstrated, by reason of its policies and their connection and relevance to the matter in dispute, a priority of interests in the application of its rule of law." *Myers v. Commercial Union Assurance Companies*, 506 Pa. 492, 485 A.2d 1113, 1115 (1984).

52.     In resolving the choice of law question, the Third Circuit has stated that Pennsylvania's flexible approach incorporates the contacts analysis of the Restatement (Second) of Conflict of Laws (1971) and the interest analysis underlying the policies of the particular states concerned with the controversy. *Carrick v. Zurich-American Insurance Group*, 14 F.3d 907, 909 (3d Cir. 1994) (citing *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir. 1991); *Teti v. Huron Insurance Co.*, 914 F. Supp. 1132, 1134-35 (E.D. Pa. 1996).

53.     This hybrid analysis "takes into account both the grouping of contacts with the various concerned jurisdictions and the interests and policies that may be validly asserted by each jurisdiction." *Blakesley v. Wolford*, 789 F.2d 236, 239 (3d Cir. 1986).

54.     Application of this two-pronged significant contacts and significant interests analysis dictates that Pennsylvania law governs all claims and defenses in this case.

55.     First, this Honorable Court must determine what the relevant jurisdictions are for consideration. Pennsylvania, Florida, and California all recognize common law invasion of

privacy. *See Cason v. Baskin*, 20 So. 2d 243 (Fla. 1944)[14]; *Vogel v. W.T. Grant Co.*, 458 Pa. 124

(1974); *Alim v. Superior Court*, 185 Cal. App. 3d 144 (1986). However, pursuant to statute, New

York has a more limited cause of action for invasion of privacy than Pennsylvania. *See* N.Y. Civ.

Rights Law § 51. As such, this analysis will focus on Pennsylvania and New York law.

56.     Section 145 of the Restatement (Second) Conflict of Laws sets forth the general

principles to be applied in choice of law determinations in tort actions. *See Laconis v. Burlington

County Bridge Com'n*, 583 A.2d 1218, 1223-24 (Pa. Super. 1990), *appeal denied*, 600 A.2d 532

(Pa. 1991), *cert. dismissed*, 503 U.S. 901 (1992).

57.     Section 145 provides that the rights and liabilities of the parties in a tort action

should be determined by the law of the state with the most significant relationship to the parties

and to the occurrence. Restat 2d of Conflict of Laws, § 145. In order to determine which state has

the most significant relationship, a court should evaluate contacts which include the place of injury,

the place where the conduct causing the injury occurred, the domicile, residence, nationality, place

of incorporation and place of business of the parties, and the place where the relationship between

the parties is centered. *Id*.

58.     The weight of the contacts is to be measured qualitatively rather than quantitatively;

that is, the contacts are relevant to the extent that they "relate to the policies and interests

underlying the particular issue before the court." *Cipolla v. Shaposka*, 267 A.2d 854, 856 (Pa.

1970).

---

[14] Florida does not recognize false light invasion of privacy as a stand-alone cause of action and instead has determined that false light and defamation have "substantial overlap." *See Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1113 (Fla. 2008) (noting that a majority of states have recognized the false light cause of action). Florida does recognize a cause of action under Section 652C of the Restatement (Second) of Torts for appropriation of name or likeness. *Allstate Ins. Co. v. Ginsberg*, 863 So.2d 156, 160-61 (Fla.2003).

59.     Furthermore, Section 153 of the Restatement (Second) Conflict of Laws specifically details the considerations of choice of law when there are multistate invasion of privacy considerations. Restat 2d of Conflict of Laws, § 153.

60.     Section 153 "calls for application of the local law of the state where the plaintiff was domiciled at the time when his privacy was invaded unless, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties." *Id* at cmt. b.

61.     The "rules of privacy are intended to protect a person's interest in being let alone. When there has been publication in two or more states of an aggregate communication that invades a person's right of privacy, at least most issues involving the tort should be determined by the local law of the state where the plaintiff has suffered the greatest injury. This will usually be the state of the plaintiff's domicile if the matter complained of has there been published." Restat 2d of Conflict of Laws, § 153, cmt. d.

62.     As discussed above, Defendants MSTM and Mendez are domiciled in New York, while Plaintiffs Hubay and Losieniecki are domiciled in Pennsylvania. Publication of the photographs and likenesses at issue occurred in numerous states by the very act of publishing them on a public internet website. However, pursuant to Section 153 of the Restatement (Second) Conflict of Laws, the forum state of this action, coupled with the residency of two of the three Plaintiffs asserting invasion of privacy claims should be determinative. As such, Pennsylvania law should be applied in this action.

63.     Second, the interest analysis focuses on each relevant state's interests in application of its law so that the court can determine the state with the most significant interest in the litigation. *Melville v. American Home Assur. Co.*, 584 F.2d 1306, 1311 (3d Cir. 1978). Under this approach,

- 43 -

"the extent to which one state has demonstrated, by reason of its policies and their connection and relevance to the matter in dispute, a priority of interest in the application of its rule of law'" is of paramount consideration. *Eimers v. Honda Motor Co., Ltd.*, 785 F. Supp. 1204, 1208 (W.D. Pa. 1992) (quoting *McSwain v. McSwain*, 215 A.2d 677, 682 (Pa. 1966)).

64.     In general, "the policy consideration underlying tort laws is the protection of persons and property from losses resulting from injury." *Palco Linings, Inc. v. Pavex, Inc.*, 755 F. Supp. 1269, 1270 (M.D. Pa. 1990). Specifically, "rules of privacy are intended to protect a person's interest in being let alone." Restatement (Second) § 153, cmt. d.

65.     "Pennsylvania has expressed a strong interest in deterring inhabitants of its state, as well as non-residents, from invading the privacy of others, even when the injury occurs outside the state and in providing for remedies for privacy torts." *Walker by Walker v. Pearl S. Buck Found.*, 1996 WL 706714, 1996 U.S. Dist. LEXIS 17927, *25 (E.D. Pa. Dec. 3, 1996).

66.     On the other hand, New York has expressed little or no interest in preventing invasions of privacy which occur outside its borders, as evidenced by the limited protections provided by the New York invasion of privacy statute, which affords protection only in cases in which the portrait or picture of an individual is "used within this state [of New York]." *See* N.Y. Civ. Rights Law § 51.

67.     As the interest in the privacy rights asserted by Plaintiffs Hubay, Losieniecki, and Dorantes are best served by the application of Pennsylvania law, Pennsylvania law should control in this case.

### 2.      Right to Privacy Claims

68.      Counts II and III of the Complaint set forth separate claims for invasion of privacy.

69.      Pennsylvania courts have adopted all four privacy torts as set forth in the Restatement (Second) of Torts, § 652, including the torts for (1) appropriation of name or likeness, and (2) publicity placing person in false light.  *VOGEL et al. v. WT Grant Company*, 458 Pa. 124, 129-30, fn 9 (Pa 1974); *see also Jenkins v. Bolla*, 600 A. 2d 1293 (Pa: Super. 1992).

70.      Section 652C defines the tort for appropriation of name or likeness as "One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." *Id*.

71.      Comment b to Section 652C states that "use or benefit" does not have to be a commercial use:

> The common form of invasion of privacy under the rule here stated is the appropriation and use of the plaintiff's name or likeness to advertise the defendant's business or product, or for some similar commercial purpose. Apart from statute, however, the rule stated is not limited to commercial appropriation. It applies also when the defendant makes use of the plaintiff's name or likeness for his own purposes and benefit, even though the use is not a commercial one, and even though the benefit sought to be obtained is not a pecuniary one.

72.      Illustration 5 of Section 652C of the Restatement (Second) of Torts confirms the liability of Defendants under this section. Specifically, Illustration 5 states: "Without the consent of A, B signs A's name to a telegram that he sent to the governor of the state, urging the governor to veto a bill that B finds objectionable. This is an invasion of A's privacy."  This Illustration is based on *Steding v. Battistoni*, 208 A.2d 559 (Conn. Cir. Ct. 1964) (a person's identity is a valuable commodity that should not be exploited absent the permission of its owner); *see also Rose v. Triple Crown Nutrition, Inc.*, 2007 U.S. Dist. LEXIS 14785, *5 (M.D. Pa.. Mar. 2, 2007) (denying

defendant's Motion to Dismiss invasion of privacy claim where defendant allegedly used a photograph of the plaintiff in its advertisements without consent).

73.     Similarly, Defendants have used, and continue to use, Plaintiffs' likenesses and names to promote and market MSTM and its political goals.  Such uses have included uses of the names of Plaintiffs' Hubay and Dorantes on a letter to Senator McSally that was available on the MSTM website.  *See* Plaintiffs' Declaratory Judgment Hearing Exhibit 5 (letter at Ex. HH thereto) and Exhibit 12, p. 35.  The past and continuing use of Plaintiff's likenesses to promote and benefit MSTM are analogous to the facts of Illustration 5.

74.     As such, Plaintiffs are entitled to declaratory relief on their claim for appropriation of names and likenesses.

75.     Additionally, under Pennsylvania law, the right of privacy false light tort under Section 652E is defined as "[o]ne who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. Restatement (Second) of Torts, § 652E; *Neish v. Beaver Newspapers, Inc.*, 581 A.2d 619, 624 (Pa. Super. 1990) ("a publication is actionable if it is not true, is highly offensive to a reasonable person and is publicized with knowledge or in reckless disregard of its falsity"); *see also Meyers v. Certified Guar. Co., LLC*, 221 A.3d 662, 673 (Pa. Super. 2019).

76.     "[U]nlike the law of defamation . . . false light invasion of privacy offers redress not merely for the publication of matters that are provably false, but also for those that, although

true, are selectively publicized in a manner creating a false impression." *Krajewski v. Gusoff*, 53 A.3d 793, 806 (Pa. Super. 2012).

77.     Comment b to Section 652E states:

It is not, however, necessary to the action for invasion of privacy that the plaintiff be defamed. It is enough that he is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position. When this is the case and the matter attributed to the plaintiff is not defamatory, the rule here stated affords a different remedy, not available in an action for defamation.

*See* Restat. 2d Torts , § 652E, cmt. b.

78.     The Pennsylvania Superior Court has held that this section of the Restatement is a part of the law of Pennsylvania but that the contours of the tort created thereby are amorphous. *Larsen v. Philadelphia Newspapers,* 543 A.2d 1181, 1188 (Pa. Super. 1988). "The interest protected by this Section is the interest of the individual in not being made to appear before the public in an objectionable false light or false position ..." Restatement (Second) of Torts § 652E, cmt. b.

79.     Florida courts recognize a tort claim under 652C, but not a false light claim. *Cf. Allstate Ins. Co. v. Ginsberg,* 863 So.2d 156, 160-61 (Fla.2003); *Agency for Health Care Admin. v. Associated Industries of Fla., Inc.,* 678 So.2d 1239, 1252 n. 20 (Fla. 1996), *with* Jews for Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1115 (Fla. 2008).

80.     Illustration 4 of Section 652E of the Restatement (Second) of Torts confirms the liability of Defendants under this section.  Specifically, Illustration 4 states: "A is a Democrat.  B induces him to sign a petition nominating C for office. A discovers that C is a Republican and demands that B remove his name from the petition. B refuses to do so and continues public circulation of the petition, bearing A's name. B is subject to liability to A for invasion of privacy."

*See Steding, supra; Battaglia v. Adams,* 164 So.2d 195, 197 (Fla. Sup. Co. 1964) (ruling in favor of a candidate who requested that his name not be placed on ballot without and stating that "nothing so exclusively belongs to a man or is so personal and valuable to him as his name, inasmuch as his reputation and the character he has built up are inseparably connected with it").

81.     The facts here are directly analogous. Plaintiffs specifically disagreed with Defendants' political agenda of making personal threats to the Marine Commandant, but, even after resignation, Defendants continue to associate Plaintiffs' likenesses and names with MSTM.  Also, the continued association with an organization having contrary public goals is similarly offensive. *See* Findings of Fact 76-82.

82.     Section 652E applies when "the publicity given to the plaintiff has placed him in a false light before the public, of a kind that would be highly offensive to a reasonable person. In other words, it applies only when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity ... It is only when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position, that there is a cause of action for invasion of privacy. Restatement (Second) of Torts § 652E, cmt. c.  In this present case, this element also is met insofar as Plaintiffs were not the only volunteers to resign from MSTM after the DC Trip. *See* Findings of Fact 80. Further, Defendant Mendez testified that MSTM was being targeted for its actions by other groups. *See* Findings of Fact 73(c) and (d). Contrary to related testimony by Defendant Mendez, it was she and not Plaintiff Hubay who coordinate postings into these other groups. *See* Findings of Fact 73(c).

83.     Furthermore, in defense of these claims, Defendants assert that the three page "Consent Form" identified in Findings of Fact 30 provided MSTM with the ability to use, distribute and profit from Plaintiffs' likenesses.

84.     Each of the Plaintiffs denies that they signed the alleged consent form at any time. However, even assuming that the consent was signed or that any consent was implied by Plaintiffs' prior association with Defendant MSTM, it is undisputed that Plaintiffs rescinded any such consent based on events of Sept. 14, 2019. *See* Findings of Fact 19-20.

85.     Additionally, the "consent" is notable for what is does NOT provide.  First, the consent form does not provide any consideration for perpetual or irrevocable use of personal information and contains no term; as such, the consent is indefinite and terminable at will.  *See Price v. Confair*, 366 Pa. 538 (Pa. 1951) ("*The general rule* is that when a contract provides that one party shall render service to another, or shall act as his agent, ... but does not specify a definite time or prescribe conditions which shall determine the duration of the relation, *the contract may be terminated by either party at will*.") (emphasis in original); *Hutchinson v. Sunbeam Coal Co.*, 519 A2d 385, 390 n. 5 (Pa. 1986) (Pennsylvania law disfavors perpetual contracts and, thus, requires a perpetual term to be expressed unequivocally). *Cf. Piecknick v. Pennsylvania*, 36 F.3d 1250, 1259 (3d Cir. 1994) ("Pennsylvania law, like that of New York, presumes that a contract for services having no specific term is terminable at will.").

86.     In the present case, there is no expressed intention on the part of the parties that, unlike a model's release, any consent (express or implied) would be perpetual or could not be revoked.  Moreover, Defendants do not dispute in any way the events of September 14, 2019 or that, as a result, the Plaintiffs have resigned from the Military Sexual Trauma Movement, Inc. ("MSTM"), no longer wish to be associated with the MSTM, and have withdrawn any consents.

87.     Second, the consent does not specifically provide for the use of an individual's images and/or convey ownership of said images. *See* Plaintiffs' Declaratory Judgment Exhibit 25l. The consent states only that "personally identifiable information" can be used for contact purposes and that a personal "story" can be used for advocacy.  No broader rights exist.

88.     As such, Defendants' continued use of the names and likenesses of the Plaintiffs after September 14, 2019 represents clear misappropriation of Plaintiffs' names and likenesses for the benefit of MSTM and also portrays Plaintiffs in a false light, i.e. as individuals still associated and/or volunteering with MSTM.

89.     More directly, Defendants shall not be and are not entitled to use the names and likenesses of Plaintiffs.[15]

90.     Plaintiffs Robert Losieniecki, Deidra Hubay, Jessica Dorantes and Alexis Gabrielle Herrick never entered into a written agreement with MSTM providing any Defendant with the right to use their names and/or likenesses from any source.

91.     Furthermore, to the extent that such permission may be implied or inferred as oral consent during their association with MSTM, Plaintiffs Robert Losieniecki, Deidra Hubay, Jessica Dorantes and Alexis Gabrielle Herrick effectively terminated any such implied consent on September 14, 2019 and no later than when the Complaint in this matter was filed.

92.     Even if Plaintiffs Robert Losieniecki, Deidra Hubay, Jessica Dorantes and Alexis Gabrielle Herrick signed the Consent Form attached as Exhibit G to Defendants' Motion to Set Aside Clerk's Entry of Default Judgment, this Consent Form does not any rights to MSTM to use the name and likeness of an executing party and any rights conveyed by this Consent Form were

---

[15] Defendants, through the testimony of Defendant Mendez, have agreed that they will not use the likenesses and names of Plaintiffs. *See* Findings of Fact 73(g). As such, this request for relief does not appear to be in dispute. However, as set forth below, such use continues.

revoked and terminated by and through the resignations of Plaintiffs Deidra Hubay, Jessica Dorantes and Alexis Gabrielle Herrick on September 14, 2019 and no later than when the Complaint in this matter was filed.

93.     Defendants Mendez, Heal, and MSTM used Plaintiffs Hubay, Dorantes, and Losieniecki's likenesses and names without permission to promote, benefit and obtain fundraising for MSTM and after notice of their rights and request for disassociation from MSTM.  As such, Defendants violated the Restatement (Second) of Torts, § 652C as to Plaintiffs.

94.     Defendants also misappropriated the names and likenesses of Plaintiffs Losieniecki and Hubay by portraying them in a false light in violation of the Restatement (Second) of Torts, § 652E – namely, that each continued to have an association with MSTM after their resignations from MSTM.

Respectfully submitted,

*/s/ Katelin J. Montgomery*
David G. Oberdick
Pa. I.D. #47648
Email:  dgo@muslaw.com

Katelin J. Montgomery
Pa. I.D. #322698
Email:  kjm@muslaw.com

MEYER, UNKOVIC & SCOTT, LLP
535 Smithfield Street, Suite 1300
Pittsburgh, PA  15222
(412) 456-2800

***Attorneys for Plaintiffs***

Dated:  June 10, 2020

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 10, 2020, a true and correct copy of the foregoing

**PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** was

filed electronically.  Parties may access this filing through the Court's ECF/PACER system.


*/s/ Katelin J. Montgomery*
Katelin J. Montgomery