## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEIDRA HUBAY, ROBERT LOSIENIECKI, JESSICA DORANTES, and ALEXIS GABRIELLE HERRICK, | ) ) ) ) ) ) | 2:19-cv-1327-NR |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| JANELLE MARINA MENDEZ, PAMELA HEAL, and MILITARY SEXUAL TRAUMA MOVEMENT, | ) ) ) ) | |
| Defendants. | ) | |

## OPINION

**J. Nicholas Ranjan, United States District Judge**

Breaking up is hard to do, and the split at the heart of this case was no exception. In happier times, the parties were allies in activism, working together toward the admirable goal of ending sexual violence in the military. Now, after falling out amid personality conflicts and disagreement over tactics, they find themselves in federal court, on opposing sides of a copyright-infringement lawsuit. But while the personal conflicts lurking beneath this case run deep, the primary question that the Court must answer is relatively straightforward: Who owns the photos?

The crux of this case is that Plaintiffs want Defendants to stop using (and pay damages for their past use of) certain photographs, taken by Plaintiff Robert Losieniecki, to promote the work of Defendants' nonprofit group, the Military Sexual Trauma Movement. Mr. Losieniecki took the photographs during a trip MSTM took to Washington, D.C. to protest and lobby elected officials on issues of interest to the group.

Plaintiffs argue that Mr. Losieniecki owns the photographs from that trip—because he took them—and so Defendants' alleged use of those photographs constitutes copyright infringement.   Defendants counter that MSTM owns the photos.   They say that Mr. Losieniecki agreed to serve as the group's photographer for the D.C. trip and participated in that event as an "official volunteer."   This, they argue, means the photographs are "works made for hire" under the Copyright Act, and thus belong to MSTM.

The precise extent to which Defendants used or continue to use the photographs remains unclear, and further factual development is needed to sort that out.   But at this stage, the Court's task is to determine the owner of the copyright.   On that issue, the answer is clear.   Based on the evidence submitted to the Court, including the testimony presented during the two-day hearing in this case, the Court finds that Mr. Losieniecki owns the photographs at issue.   While the Court found much of Defendants' testimony on the relevant issues to be credible, the inescapable fact is that the "work made for hire" doctrine does not apply here.   Instead, that doctrine applies only to works produced by employees or, if a written contract exists, independent contractors. An unpaid volunteer for a nonprofit organization is neither.   Alternatively, applying the familiar *Reid* factors, the Court finds that Mr. Losieniecki was not operating as the equivalent of an employee under the "work made for hire" doctrine, and so owns the photographs on that basis, as well.

The Court will therefore enter a declaration in Mr. Losieniecki's favor on his copyright claim.

## PROCEDURAL BACKGROUND

Plaintiffs filed this lawsuit on October 17, 2019.   [ECF 1].   In their complaint, Plaintiffs pled claims for (1) copyright infringement (asserted by Plaintiff Losieniecki against all Defendants); (2) invasion of privacy based on

misappropriation of names and likenesses (asserted by Plaintiffs Hubay and Dorantes against all Defendants); (3) invasion of privacy based on "false light" (asserted by Plaintiffs Hubay, Dorantes, and Losieniecki against all Defendants); (4) declaratory judgment (asserted by all Plaintiffs against all Defendants); and (5) intentional infliction of emotional distress (asserted by all Plaintiffs against all Defendants).

Then, on November 22, 2019 and December 4, 2019, Plaintiffs requested entries of default after Defendants failed to respond within the time allotted by the Federal Rules of Civil Procedure. [ECF 6; ECF 11]. The Clerk entered a default as to Defendants Janelle Marina Mendez and the Military Sexual Trauma Movement on November 22, 2019, and as to Defendant Pamela Heal on December 5, 2019. [ECF 8; ECF 12]. Defendants then retained counsel and filed a motion to vacate the Clerk's entries of default. [ECF 17]. The Court granted that motion on January 31, 2020. [ECF 23].

Defendants answered the complaint on February 3, 2020. [ECF 24]. In their answer, Defendants asserted six counterclaims of their own: (1) copyright fraud (asserted by all Defendants against Plaintiff Losieniecki); (2) intentional infliction of emotional distress (asserted by all Defendants against all Plaintiffs); (3) declaratory judgment (asserted by all Defendants against all Plaintiffs); (4) tortious interference (asserted by all Defendants against all Plaintiffs); (5) *prima facie* tort (asserted by all Defendants against all Plaintiffs); and (6) permanent injunction (asserted by all Defendants against all Plaintiffs).

The Court held an initial case management conference on February 13, 2020. [ECF 28]. During that conference, the Court raised with the parties the prospect of early resolution of the threshold legal issues here (most notably, copyright ownership), either through the filing of cross-motions for preliminary

injunction or summary judgment, a speedy declaratory-judgment hearing, or a bench trial. [ECF 29, ¶ 7]. The Court left it to the parties to confer and decide on a preferred mechanism, and on February 28, 2020, the parties confirmed that they had agreed to present the issues through cross-motions for preliminary injunction and an evidentiary hearing on those motions. [ECF 33]. They then filed preliminary-injunction motions, and the Court held a two-day evidentiary hearing on those motions on May 8, 2020 and May 13, 2020. [ECF 36; ECF 37; ECF 52; ECF 54].

At the end of the evidentiary hearing, the Court raised with the parties the possibility of converting their motions to ones seeking declarations on the copyright issue, given the complete record presented at the hearing. [ECF 59, p. 182:5-6]. The parties then filed a joint motion to "convert cross-motions for preliminary injunction into cross-motions for declaratory judgment," which the Court granted. [ECF 60; ECF 61]. Afterward, the parties filed proposed findings of fact and conclusions of law in which they requested, in relevant part, declaratory relief to determine ownership of the copyright in Mr. Losieniecki's photographs and Defendants' alleged infringement of that copyright. [ECF 62; ECF 63].[1]

On November 12, 2020, Plaintiffs and Defendant Heal entered a consent decree resolving all claims asserted against Ms. Heal. [ECF 77]. The Court

---

[1] The parties' post-hearing submissions also address, and seek declaratory or injunctive relief related to, Plaintiffs' state-law invasion-of-privacy tort claims (*i.e.*, false light and misappropriation of names and likenesses). *See* [ECF 62, pp. 9-12; ECF 63, pp. 1-3, 9-10, 12-16, 28-30, 40-51]. This request appears to have been prompted by the Court asking questions and making statements during the evidentiary hearing about what proof would be required with respect to those claims. *See, e.g.,* [ECF 58, p. 6:12-16 ("As it pertains to plaintiffs' state law claims, I need to understand exactly how it was harmful to Ms. Hubay, Ms. Dorantes, and Ms. Herrick for their likenesses to be used and

approved the decree on November 13, 2020 and dismissed Plaintiffs' claims against Ms. Heal with prejudice. [ECF 78].

## LEGAL STANDARD

The Court has the authority to grant declaratory relief under the Declaratory Judgment Act, which states, in relevant part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

Expedited resolution of a declaratory-judgment claim is also authorized and appropriate. Under both the Declaratory Judgment Act and Federal Rule of Civil Procedure 57, the Court retains "broad discretion to determine whether some or all of [the parties'] requests for declaratory judgment should be

---

displayed in the specific photographs and social media postings.")]. Upon further review, however, those claims are not properly before the Court at this time. They were not raised in the parties' original preliminary-injunction motions. *See generally* [ECF 36; ECF 37-1]. Moreover, the Court finds that it cannot issue a declaratory judgment that Defendants have, in fact, violated Plaintiffs' privacy rights. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (explaining that declaratory judgment is "inappropriate" when it is sought "to adjudicate past conduct" or "to proclaim that one party is liable to another."). Nor could the Court generally declare what Plaintiffs' privacy rights are. A declaration that merely describes the theoretical boundaries of Plaintiffs' context-specific privacy rights would constitute an inappropriate "opinion advising what the law would be upon a hypothetical state of facts." *Wyatt, Virgin Islands, Inc.*, 385 F.3d 801, 806 (3d Cir. 2004). Given this, and because resolution of copyright ownership will functionally resolve the bulk of this case, the Court confines its analysis here to the question of who owns the copyright in the disputed photographs.

entertained in an expedited fashion." *Cty. of Butler v. Wolf*, No. 20-677, 2020 WL 2769105, at *2 (W.D. Pa. May 28, 2020) (Stickman, J.).   "Expedited proceedings on a motion for declaratory judgment are appropriate where the determination is largely one of law, and factual issues (while expedited discovery is permitted and frequently granted) are not predominant." *Id.*[2]

Here, "[a]s the parties have not requested," and are not entitled to, "a jury trial on these issues, the Court will treat the . . . evidentiary hearing as a non-jury trial on the merits" of the parties' copyright-ownership claims.   *Nolu Plastics, Inc. v. Valu Eng'g, Inc.*, No. 04-5149, 2005 WL 670694, at *1, n.1 (E.D. Pa. Mar. 21, 2005); *see, e.g., Phila. Newspapers, Inc. v. Newspaper & Magazine Employees Union*, No. 87-4273, 1987 WL 15430, at *1 (E.D. Pa. Aug. 7, 1987) (entering "findings of facts and conclusions of law" following "expedited consideration" of a request for "declaratory judgment" on a disputed phrase of arbitration agreement).

---

[2] Strictly speaking, there is no such thing as a "motion for declaratory judgment" under the Federal Rules. *See Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 943 (9th Cir. 2009) ("[A] party may not make a motion for declaratory relief, but rather, the party must bring an action for a declaratory judgment.").  But the Court is permitted to promptly resolve a declaratory-judgment "action" by either scheduling an expedited bench trial or by construing a "motion" for declaratory judgment as "a motion for summary judgment on [the plaintiff's] 'action' for declaratory judgment." *Id.*

While the Court finds it appropriate to treat the evidentiary hearing as a non-jury trial on the parties' declaratory-judgment claims here, it would make no practical difference if, instead, a summary-judgment standard applied. As will be discussed, Plaintiff Losieniecki is entitled to judgment on his copyright claim even if the Court accepts Defendants' version of events, as it largely has.

At a non-jury trial, a district court "sits as the ultimate finder of fact." *Ingomar Ltd. P'ship v. Current*, No. 06-1433, 2008 WL 2950891, at *1, n.1 (M.D. Pa. July 29, 2008).  The district court's factual findings are entitled to deference and reviewed for "clear error" on appeal. *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 831 (3d Cir. 2020).

## FINDINGS OF FACT

The parties developed the facts relevant to the pending motions over a two-day evidentiary hearing on May 8, 2020 and May 13, 2020. [ECF 52; ECF 54].  Based on the evidence and testimony presented at that hearing, the Court makes the following findings of fact relevant to its decision:

**I.      The parties' shared military service and affiliation with MSTM.**

1.      Despite their current differences, the parties have much in common.  All (save for MSTM) are United States military veterans who served their country honorably in various ranks and capacities.  Likewise, all of them became activists against sexual violence in the military after they were discharged.

2.      Defendant Military Sexual Trauma Movement, referred to by the parties as "MSTM," is a 501(c)(4) nonprofit entity that focuses on lobbying elected officials to enact policies that protect survivors of military sexual trauma and other discrimination.  [ECF 24, p. 11 ¶¶ 3, 8].

3.      Defendant Janelle Marina Mendez founded MSTM in June 2018. [ECF 59, p. 82:4-5].  She was motivated to do so by a desire to help female veterans struggling with sexual assault, domestic violence, sexuality, fertility, substance abuse, and homelessness.  [*Id.*].

4.      Defendant Pamela Heal, at all relevant times, was MSTM's "Executive Director of Civic Engagement" and was a member of its Board of Directors.  [ECF 59 at 121:17-20].

5.     Plaintiffs Deidra Hubay, Jessica Dorantes, and Alexis Gabrielle Herrick are former members of MSTM, who first joined the group as volunteers in July 2019.  [ECF 58, pp. 75:16-24, 85:16-24, 175:12-13, 228:7-9].  Ms. Hubay, Ms. Dorantes, and Ms. Herrick each held a position on MSTM's "Senior Leadership Team" at all times relevant to the events at issue here.  [ECF 58, p. 83:13-18; ECF 59, p. 89:13-14].

6.     Plaintiff Robert Losieniecki is Plaintiff Deidra Hubay's husband. [ECF 58, p. 82:1-2, 104:10-12].  He was not substantially involved with MSTM before September 2019, except that he may have assisted Ms. Hubay with online research related to the group's work. [ECF 58, p. 24:24-25:1; ECF 59, p. 85:21-86:4, 87:25-88:3].

## II.   Plaintiffs' affiliation with MSTM before the Washington, D.C. trip.

7.     Before September 10, 2019, Plaintiffs had not met Ms. Mendez, Ms. Heal, or any other volunteer or supporter of MSTM in person.  [ECF 58, p. 14:2-9, 175:14-20, 180:23-181:4, 235:3-9; ECF 59, p. 150:6-17].

8.     Instead, MSTM recruited volunteers and supporters online, primarily through social media, and conducted meetings using text messages and video calls with Facebook Messenger, Loomio, or Google Hangouts. [ECF 58, p. 82:5-22; 179:18-180:2-6; ECF 59, p. 7:3-16].

9.     MSTM had no paid employees and did not pay its volunteers for their services.  [ECF 58, p. 76:1-24].

## III.   MSTM's trip to Washington, D.C., and Plaintiffs' resignation.

10.     MSTM planned a four-day trip to Washington, D.C., from September 10, 2019 until September 14, 2019, with events planned on September 12, 13, and 14. [ECF 68-1, Ex. 7].

11.    The trip was intended to serve as MSTM's first in-person meeting and an opportunity for the group to lobby elected officials.  [ECF 68-1, Exs. 7, 8, 9].

12.    The trip schedule included various planned events, including designated times for "bonding" and "leisure," a sit-in at Senator Martha McSally's office, lobbying meetings with various elected officials, and a protest at the Capitol against the nomination of General John E. Hyten as Vice Chairman of the Joint Chiefs of Staff.  [ECF 68-1, Ex. 7; ECF 59, p. 126:16-25].

13.    On top of these planned events, Defendant Mendez announced during the trip that she intended to protest in front of the house of the Commandant of the United States Marine Corps, and she invited other group members to join her.  [ECF 68-1, Ex.11; ECF 58, p. 91:4-92:7].

14.    Several MSTM members, including Plaintiffs Hubay and Dorantes, expressed disagreement with this last-minute addition to the schedule.  [ECF 68-1, Ex. 11].  They did so primarily out of concern that the protest could be dangerous or result in retaliation against MSTM members who were either on active duty or had spouses on active duty.  [ECF 68-1, Ex. 11; ECF 58, pp. 94:11-95:21; 98:10-99:11; 190:4-192:14; 197:6-198:2].

15.    Over these objections, Defendant Mendez proceeded with the protest on September 14, 2019.  [ECF 68-1, Ex. 11].  During the protest, Ms. Mendez made emphatic and provocative statements, which Plaintiffs considered "abusive and confrontational." [ECF 63, ¶ 17; ECF 58, p. 95:11-21]; [ECF 68-1, Ex. 11; ECF 72-1, Ex. 26 ("I deserve to be Commandant more than you . . . I will come for you!")].

16.    Defendants livestreamed video of the confrontation at the Commandant's house to MSTM's followers on social media.  [ECF 58, pp. 96:17-97:10; 196:9-16; 233:3-14].

17.    In response to the unplanned protest, Plaintiffs Hubay, Dorantes, and Herrick immediately announced their resignation from MSTM.  [ECF 68-1, Ex. 11; ECF 58, pp. 94:12-96:6].  In text messages communicating their resignations, each Plaintiff stated: "I withdraw my consent for any and all pictures or use of my name regarding the Movement and I decline consent for further use of my photos or name in any fashion."  [ECF 68-1, Ex. 11; ECF 58, p. 94:6-10].

18.    Defendant Mendez responded to Plaintiffs' resignations with a message that stated, "okay that's your right. I'll respect it." [ECF 68-1, Ex 11].

**IV.    The disputed photographs.**

19.    Mr. Losieniecki attended MSTM's Washington, D.C. trip with his wife, Ms. Hubay, and took photographs of MSTM's various activities throughout.  [ECF 58, pp. 17:25-18:6; 35:3-14].

20.    Mr. Losieniecki used his wife's camera and SIM cards to take the photographs. [ECF 58, p. 17:12-24].

21.    In all, Mr. Losieniecki took 557 photographs on September 12, 2019 and 817 photographs on September 13, 2019.  [ECF 58, p. 13:14-17].

22.    Plaintiffs contend that Defendants have infringed Mr. Losieniecki's copyright in 26 of those photographs, by using them on Instagram, Facebook, and MSTM's website, as well as in an email sent by Defendant Mendez. [ECF 68-1, Ex. 2; ECF 58, p. 12:5-6].

23.    The photographs generally depict the activities of MSTM volunteers during the Washington, D.C. trip.  Some of the photographs depict Plaintiffs Hubay, Dorantes, and Herrick participating in those events. [ECF 68-1, Ex. 2].

24.    Mr. Losieniecki did not enter into any written agreement with MSTM concerning either the provision of photography services or the transfer

- 10 -

of any ownership or copyright interest in his photographs to MSTM.  [ECF 58, pp. 18:23-19:5; 19:23-20:5; 111:5-10; 184:23-184:1].

25.    Mr. Losieniecki agreed to take photographs of MSTM's activities in some volunteer capacity, and likely would have permitted MSTM to use the photographs if not for the dispute over Ms. Mendez's impromptu protest at the Commandant's house. For example:

  a.    Mr. Losieniecki submitted an excuse letter to his school that indicated that he was going to serve as MSTM's "photographer on duty" for the D.C. trip.   [ECF 59, p 70:3-71:13]. This provides some corroboration of Defendants' testimony that the group had agreed (or at least discussed) that Mr. Losieniecki "was going to be the photographer" for the D.C. trip.  [ECF 59, p. 137:20-21].  The Court does not credit Mr. Losieniecki's testimony that he did not see the "photographer on duty" language and does not know why it was there. [ECF 58, pp. 26:1-27:10; 44:25-45:24].

  b.    For several reasons, the Court does not credit Mr. Losieniecki's testimony that he took the photographs in question solely for his and his wife's private use.  For example:

  i.    Mr. Losieniecki brought a camera on the trip and took an extremely large number of photographs (1,374). [ECF 58, p. 13:14-17].  This is more consistent with someone serving in the "role" of photographer.

  ii.    Similarly, many of the photographs depict MSTM members, including members other than his wife, posing in pre-scripted "formations." *See, e.g.,* [ECF 68-1, Ex. 2 at Exs. B, C, F, H].  This is more consistent

with Mr. Losieniecki taking photographs for the group's promotional use.

iii.    Mr. Losieniecki testified that he was unaware of any other spouse who attended the D.C. trip with an MSTM member. [ECF 58, pp. 34:11-35:2]. This is consistent with Mr. Losieniecki attending the trip for the specific purpose of taking photographs.

iv.    Mr. Losieniecki wore red and black clothes, matching the "uniform" worn by all MSTM members on the trip. [ECF 58, pp. 38:6-39:2]. Mr. Losieniecki's testimony that his clothing choice was "just a coincidence" was implausible and undermined his overall credibility.

v.    Ms. Hubay's testimony that she did not tell her husband why they were going to D.C. at all, supposedly because they have a "very trusting relationship," was implausible and undermined her overall credibility. [ECF 58, p. 150:1-11].

c.    Given the above, the Court finds Defendants' testimony that Mr. Losieniecki had agreed, at least informally, to serve as photographer and take photographs of the D.C. trip to be generally more credible. In particular:

i.    The Court credits Ms. Mendez's testimony that MSTM's senior leadership team held a meeting where they "discussed photography" for the trip and agreed that Mr. Losieniecki "would be the movement photographer" for that event. [ECF 59, pp. 89:16-90:1].

ii. The Court credits Ms. Mendez's testimony that Mr. Losieniecki "accepted the role" of "movement photographer" for the D.C. trip.  [ECF 59, p. 72:1-4].

iii. The Court credits Ms. Mendez's testimony that MSTM planned to use the photographs Mr. Losieniecki took to "support … news stories coming out" about the group's activities.  [ECF 59, p. 93:14-23].

iv. The Court credits Ms. Heal's testimony that Ms. Hubay introduced Mr. Losieniecki to others as "the movement photographer" during the D.C. trip.  [ECF 59, p. 137:5-21].

26.    The Court also credits Ms. Mendez's testimony that Defendants controlled certain aspects of Mr. Losieniecki's photography.  Specifically, the Court finds that Ms. Mendez or Ms. Heal developed the "formations" the group members posed in for many of the photographs and instructed Mr. Losieniecki on "where he was going to take the photos for them to have a certain look that [MSTM] wanted" and capture "all the scenes [they] were looking for." [ECF 59, pp. 29:22-30:3; 96:3-14; 98:3-7].  The Court further finds that Ms. Mendez spoke to Mr. Losieniecki about a schedule he had to follow during the trip. [ECF 59, p. 96:19-22 ("Then Alex and I -- I mean, Robert [Losieniecki] and I spoke about how -- what he needs to film at what block hour.  So one was the schedule for him and his work and one for his schedule for leisure.")].

27.    Mr. Losieniecki was not paid or compensated for his work or for any of the photographs he took. At most, MSTM may have provided him with "scholarship lodging," by which Defendants seem to mean that he was allowed to stay in the same Airbnb that Defendants had reserved for Ms. Hubay and other staff members.  [ECF 59, pp. 91:12-92:17].

28.    Aside from the alleged "scholarship lodging," there is no evidence that MSTM provided Mr. Losieniecki with any employee benefits.

29.    MSTM did not provide Mr. Losieniecki with a W-2 or any other tax documents, and there is no indication that it treated Mr. Losieniecki as an employee, an independent contractor, or anything else for tax purposes. [ECF 58, p. 19:17-22; ECF 59, p. 61:13-15].

30.    Mr. Losieniecki did not have a significant volunteer role with MSTM before the D.C. trip.  The parties dispute whether he had previously completed a volunteer sign-up form. But, regardless, the only other work he may have done for MSTM consisted of helping Ms. Hubay with online research (or, "intelligence," as Ms. Mendez referred to it) related to the group's work. [ECF 58, pp. 24:24-25:1; ECF 59, pp. 85:21-86:4; 87:25-88:3].  Ultimately, there is no evidence that Mr. Losieniecki had regular or substantial involvement with the group before September 2019.

31.    MSTM's plan was for all volunteers attending the Washington, D.C. trip to execute several consent forms. [ECF 59, p. 103:51-105:10]. Defendants allege that Plaintiffs signed a "Consent to Release of Information" that authorized MSTM to release "personally identifiable information to news and media outlets," as well. *See, e.g.,* [ECF 24, ¶ 15 & Ex. B; ECF 59, p. 73:21-75:8; ECF 75-1, PDF p. 14]. That form contained no language making such consent "irrevocable."[3]

---

[3] Defendants do not suggest that Plaintiffs ever signed the more detailed consent form separately prepared by MSTM, which requested "irrevocable" consent to use the signer's "likeness and voice on a video, audio, photographic, digital, electronic or any other medium[.]" [ECF 75-1, PDF p. 16].

32.    The parties dispute which, if any, volunteers, completed the consent forms.  Ms. Mendez and Ms. Heal testified that all participants were required to complete them, and that Plaintiffs essentially deleted the consent documents from a shared Google Docs drive after this dispute arose. [ECF 59, 107:2-10; 142:10-143:18; 145:17-146:18].

33.    As noted above, on or about September 14, 2019, Plaintiffs Hubay, Dorantes, and Herrick expressly revoked their consent for MSTM to use their likenesses in any photographs disseminated by MSTM.  [ECF 68-1, Ex. 11].

**V.    The competing copyright registrations.**

34.    Prior to this lawsuit, both Mr. Losieniecki and Ms. Mendez (on behalf of MSTM) filed and obtained competing copyrights asserting ownership over the disputed photographs.   [ECF 68-1, Ex. 1; ECF 75-1, PDF p. 35].

35.     Mr. Losieniecki's copyright, identified as VA 2-173-194, is titled "DC 2019" and was registered effective October 9, 2019.  [ECF 68-1, Ex. 1].

36.    MSTM's copyright, identified as VA 2-176-197, is titled "Military Sexual Trauma Movement takes on Washington D.C" and was registered effective October 31, 2019.  [ECF 75-1, PDF p. 35].

<u>**CONCLUSIONS OF LAW / ANALYSIS**</u>[4]

The question now before the Court is: Who owns the copyright in the disputed photographs—Plaintiff Losieniecki, or Defendants Mendez and MSTM?  Both Mr. Losieniecki and Ms. Mendez have filed copyrights with the

---

[4] The Court's legal analysis below will serve as the "conclusions of law required by Fed. R. Civ. P. 52(a)." *Reubush v. St. Paul Fire & Marine Ins. Co.*, No. 85-3576, 1986 WL 12033, at *1 (E.D. Pa. Oct. 23, 1986); *see* Fed. R. Civ. P. 52(a)(1) ("In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court. Judgment must be entered under Rule 58.").

U.S. Copyright Office, and the Court must now decide which remains valid. *See Chere Amie, Inc. v. Windstar Apparel, Corp.*, 191 F. Supp. 2d 343, 351 (S.D.N.Y. 2001) ("[T]he Copyright Office does not adjudicate competing claims for the same work … Instead, the Office issues certificates to both parties and the question of validity is left to the courts.").

The Copyright Act "provides that copyright ownership 'vests initially in the author or authors of the work.'" *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) (quoting 17 U.S.C. § 201(a)). In most cases, "the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Id.*

Here, it is undisputed that the relevant photographs were taken by Mr. Losieniecki. He is thus the "author" and presumptive holder of any copyright. *See Schrock v. Learning Curve Int'l, Inc.*, 586 F.3d 513, 524–25 (7th Cir. 2009) ("[A]s the creator of the photos, Schrock's copyright arose by operation of law.").

But the analysis doesn't end there. Instead, as Defendants correctly point out, "[t]he [Copyright] Act carves out an important exception . . . for works made for hire." *Reid*, 490 U.S. at 737. A "work for hire" is "either (1) a work created by an employee within the scope of his employment, or (2) a 'specially ordered or commissioned' work if it falls within nine enumerated categories of works and the parties agree in writing to designate it as a work for hire." *TD Bank N.A. v. Hill*, 928 F.3d 259, 272 (3d Cir. 2019). "If a work qualifies as a work for hire, the Act treats the employer or principal as the author, and the copyright presumptively vests in the principal unless the parties execute an agreement to the contrary." *Id.* at 273. Here, as it is undisputed that there is no writing designating the photographs as "works

made for hire," only the first category of works for hire—a work created by an employee within the scope of his employment—is applicable.

Defendants admit that Mr. Losieniecki "was not an employee in the tradition[al] or more limited sense of the word," but they argue that the Copyright Act's use of the term "employment" is "expansive enough to cover non-salaried employees, those paid in kind, and arguably even volunteers." [ECF 62, p. 5]. Specifically, they argue that consideration of the factors the Supreme Court identified in *Reid* to "determine whether an employment relationship exists," *Marco v. Accent Pub. Co.*, 969 F.2d 1547, 1550 (3d Cir. 1992), suggests that Mr. Losieniecki was MSTM's employee for copyright purposes, if perhaps not for any other.

The Court rejects this argument for two reasons. First, the *Reid* factors do not apply because Mr. Losieniecki was not a "hired party" under traditional agency-law principles. Second, even if the *Reid* factors apply, Mr. Losieniecki's volunteer work for MSTM more closely approximated the work of an "independent contractor" retained for a specific project, rather than an "employee." Thus, at least without any agreement in writing to designate Mr. Losieniecki's photographs as "works made for hire," there is no legal basis for the Court to attribute authorship of those photographs to MSTM.

## I.   The *Reid* factors do not apply because Mr. Losieniecki was not a "hired party."

In *Reid*, the Supreme Court identified a series of factors that courts should consider in deciding "whether a hired party is an employee under the general common law of agency." *Reid*, 490 U.S. at 751. These factors test the degree of control that the alleged employer exercises over the alleged employee, to determine whether she is, in fact, an "employee," rather than an

"independent contractor" or some other type of "hired" agent. The factors must be weighed holistically—"[n]o one ... is determinative." *Id.* at 752.

The *Reid* factors are not unique to copyright law. They derive from the Second Restatement of Agency's formulation of the common-law definition of a "servant." *See id.* at 740, 743 ("[O]rdinary canons of statutory interpretation indicate that the classification of a particular hired party should be made with reference to agency law."). This definition is often used in the many different contexts in which it is necessary to determine whether an employment relationship exists as a matter of agency law. For example, the Supreme Court has adopted the same factors to determine whether a claimant is an "employee" for employment-discrimination purposes. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-24 (1992).[5]

The problem for Defendants here is that these factors only apply to determine "whether a *hired party* is an employee under the general common law of agency." *Reid*, 490 U.S. at 751 (emphasis added). Thus, before even "attempting to apply" those factors, the Court "must consider the antecedent question" of whether Mr. Losieniecki is "a 'hired party' of [MSTM] in the first instance." *Kemether v. Pa. Interscholastic Athletic Ass'n, Inc.*, 15 F. Supp. 2d 740, 757-58 (E.D. Pa. 1998).

This "crucial and elementary initial inquiry" is "obligatory before jumping straight into verbal manipulation of the case law tests for an employment relationship." *Id.* at 758 (cleaned up). In other words, the flexible common-law agency factors apply "only in situations that plausibly approximate an employment relationship." *Graves v. Women's Prof'l Rodeo Ass'n, Inc.*, 907 F.2d 71, 74 (8th Cir. 1990). "A plaintiff who was not hired in

---

[5] In fact, the Supreme Court in *Darden* quoted *Reid* when adopting these factors in the employment-discrimination context. *See Darden*, 503 U.S. at 323.

the first instance, and is therefore neither an independent contractor nor an employee, falls outside the conventional master-servant relationship as understood by the common-law agency doctrine." *Kemether*, 15 F. Supp. 2d at 758; *see also O'Connor v. Davis*, 126 F.3d 112, 115 (2d Cir. 1997) ("[O]nly where a 'hire' has occurred should the common-law agency analysis be undertaken."); *Bryson v. Middlefield Volunteer Fire Dep't, Inc.*, 546 F. Supp. 2d 527, 529 (N.D. Ohio 2008) (noting that the "common law agency test presume[s] there has been a 'hire'[.]").

The question, then, is what constitutes a "hire." At a minimum, courts have generally held that the concept of hiring includes an "antecedent requirement of remuneration." *Bryson*, 546 F. Supp. 2d at 529. This is consistent with the ordinary understanding of what it means to be employed. *Id.* at 529-30. Indeed, "[c]entral to the meaning" of the words "employee," "employer," and "employ" is "the idea of compensation in exchange for services: an employer is someone who pays, directly or indirectly, wages or a salary or other compensation to the person who provides services—that person being the employee." *Graves*, 907 F.2d at 73; *see also* "Employee," Merriam-Webster.com, available at https://www.merriam-webster.com/dictionary/employee ("[O]ne employed by another usually for wages or salary and in a position below the executive level.").

What all this means is that the *Reid* factors "cannot be the basis for a preliminary inquiry when the question involves a volunteer," *Bryson*, 546 F. Supp. 2d at 529, at least when that volunteer has not received remuneration akin to an employee. *See Day v. Jeannette Baseball Ass'n*, No. 12-267, 2013 WL 5786457, at *4 (W.D. Pa. Oct. 28, 2013) (Mitchell, J.) ("A volunteer who is not hired is neither an independent contractor nor an employee[.]"), *report and*

*recommendation adopted by* 2013 WL 5786457, at *1 (W.D. Pa. Oct 28, 2013) (Conti, C.J.).[6]

Here, the Court found that Mr. Losieniecki agreed to take photos for MSTM in a volunteer capacity during the D.C. trip.  *See* Finding of Fact ("FOF") No. 25.  But it is undisputed that Mr. Losieniecki did not receive wages or have any ongoing, employee-like relationship with MSTM beyond that agreement.  Instead, at most, Defendants argue that Mr. Losieniecki received free "scholarship lodging" by staying in an Airbnb room that MSTM reserved for his wife, Ms. Hubay—a room that MSTM would have reserved for Ms. Hubay no matter if Mr. Losieniecki was on the trip.  *See* FOF No. 27.  This is no more than the sort of "minor benefit associated with a volunteer position" that "do[es] not constitute compensation, particularly when [it is] not related to career opportunities." *Neff v. Civil Air Patrol*, 916 F. Supp. 710, 712 (S.D. Ohio 1996); *cf. Hall v. Delaware Council on Crime & Justice*, 780 F. Supp. 241,

---

[6] *See, e.g., Kemether*, 15 F. Supp. 2d at 758 (holding that volunteer basketball official was not a "hired party" for purposes of applying common-law agency factors where only remuneration was "liability insurance and a patch worn as part of the [plaintiff's] uniform"); *O'Connor*, 126 F.3d at 116 (unpaid student intern was not an employee at clinic where she received "no salary or other wages, and no employee benefits such as health insurance, vacation, or sick pay," because compensation is "an essential condition to the existence of an employer-employee relationship"); *Blankenship v. City of Portsmouth*, 372 F. Supp. 2d 496, 500 (E.D. Va. 2005) ("Because plaintiff received no monetary benefits or other compensation from his position as a volunteer auxiliary deputy sheriff . . . he does not qualify as an employee under the ADEA."); *Neff v. Civil Air Patrol*, 916 F. Supp. 710, 713 (S.D. Ohio 1996) ("Title VII will not protect volunteers who are not working 'in expectation of compensation.'"); *Smith v. Berks Cmty. Television*, 657 F. Supp. 794, 796 (E.D. Pa. 1987) ("I conclude that unpaid volunteers are not employees within the meaning of the Act."); *Williams v. City of Harrisburg*, No. 03-2339, 2005 WL 2335131, at *3 (M.D. Pa. Sept. 23, 2005) ("[M]any courts have held that volunteers who do not receive any compensation or benefits are not 'employees' for Title VII purposes.").

244 (D. Del. 1992) ("Plaintiff has alleged that reimbursement for some work-related expenses and free admittance to an annual luncheon constitute compensation significant enough to raise a volunteer to the status of an employee. . . . [T]he 'remuneration' received by the DCCJ volunteers is insufficient to consider these volunteers employees for purposes of Title VII."), *aff'd*, 975 F.2d 1549 (3d Cir. 1992).

For this reason, the Court holds that Mr. Losieniecki was not a "hired party" at all, and thus could not have been an "employee" of MSTM for purposes of the "work for hire" exception to the Copyright Act. Regardless of how "official" Mr. Losieniecki's volunteer status might have been, it did not "plausibly approximate an employment relationship," *Graves*, 907 F.2d at 74, because he was not compensated beyond receiving the sort of "minor benefits associated with a volunteer position" that "do not constitute compensation[.]" *Neff*, 916 F. Supp. at 712.

## II. Even under the *Reid* factors, Mr. Losieniecki was not an "employee" for purposes of the "work made for hire" exception.

In any event, even if the Court were to apply the *Reid* factors, they would not support a finding that Mr. Losieniecki is an "employee." To the contrary, if anything, his volunteer relationship with MSTM more closely approximated that of an unpaid independent contractor. And absent a written agreement to the contrary (which does not exist here), an independent contractor retains the copyright in his or her "works." *See* 17 U.S.C. § 101(2).

The factors identified in *Reid*, drawn from the Restatement (2d) of Agency's definition of a "servant," include at least: (1) the hiring party's right to control the manner and means by which the product is accomplished; (2) actual control over the details of the work; (3) the skill required; (4) the source of tools; (5) the location of the work; (6) the length of employment or duration

of the relationship between the parties; (7) the hiring party's right to assign more work; (8) the hired party's discretion over work hours; (9) the method of payment; (10) the hired party's role in hiring and paying assistants; (11) whether the work is part of the regular business of the hiring party; (12) whether the hiring party is in business; (13) the provision of employee benefits; and (14) the tax treatment of the hired party.  *See Reid*, 490 U.S. at 751-52. The Court weighs those factors here as follows:

(1)  ***Right to Control and Actual Control.***  The first and second factors—the hiring party's (1) right to control and (2) actual control over the manner and means by which the "work" is produced—are neutral or weigh slightly in favor of finding that Mr. Losieniecki is an employee.  That is, the Court finds that Mr. Losieniecki agreed to take photos for MSTM and that Ms. Mendez and Ms. Heal directed the MSTM members on where to stand and pose for some of the photographs he took.  *See* FOF Nos. 25, 26.  At the same time, Mr. Losieniecki was otherwise free to take candid photos as he wished.  This was not a professional photoshoot or a situation in which Mr. Losieniecki was directed to take only very specific photographs.  Instead, at most, MSTM and Ms. Mendez had some informal authority to ask Mr. Losieniecki to take certain photographs they wanted.

(2)  ***Skill Required.***  The "skill required" factor is neutral or weighs slightly in favor of finding that Mr. Loseiniecki was an employee.  Normally, courts view the fact that a hired party performed work requiring special skill as evidence that he or she was an independent contractor, rather than an employee.  *See Reid*, 490 U.S. at 752 ("Examining the circumstances of this case in light of these factors, we agree with the Court of Appeals that Reid was not an employee of CCNV but an independent contractor . . . Reid is a sculptor, a skilled occupation.").   Here, Mr. Losieniecki is not a professional

photographer, and the photographs taken do not appear to have required any special degree of photographic skill. This could weigh in favor of finding him to be an employee. That said, Mr. Losieniecki was selected because he had some degree of photographic skill, or at least an interest and the necessary camera equipment. *See* FOF No. 20.

(3) ***Source of Tools.*** The "source of tools" factor weighs against finding that Mr. Losieniecki is an employee. Mr. Losieniecki used a personal camera and SIM cards to take the photographs (technically materials owned by his wife), and Defendants do not identify any supplies that they provided to Mr. Losieniecki. *See* FOF No. 20.

(4) ***Work Location.*** The "work location" factor weighs against finding that Mr. Losieniecki is an employee. The "work" in question took place at various public venues and not in any location suggestive of an employment relationship (such as company offices or the like).

(5) ***Length of Employment.*** The "length of employment" factor weighs heavily against finding that Mr. Losieniecki is an employee. Mr. Losieniecki took photographs for MSTM over a period of just two days, and he did not have an ongoing relationship with MSTM of any significance. *See* FOF Nos. 21, 30.

(6) ***Hiring Party's Right to Assign More Work.*** The "right to assign more work" factor weighs against finding that Mr. Losieniecki is an employee. Mr. Losieniecki agreed to take photographs for MSTM during the D.C. trip, and MSTM controlled his work on that trip to some degree. *See* FOF Nos. 25, 26. But there is no suggestion that MSTM had any authority to, for example, ask him to take photographs of future events. *See* FOF No. 24.

(7) ***Hired Party's Discretion Over Work Hours.*** The "discretion over work hours" factor is neutral or weighs slightly in favor of finding that

Mr. Losieniecki is an employee. MSTM had some control over Mr. Losieniecki's "hours," in the sense that they scheduled the D.C. trip and the events that he was to photograph. *See* FOF Nos. 25, 26. Other than that, there is no evidence that MSTM had the authority to compel Mr. Losieniecki to work specific hours, or to work at all beyond the D.C. trip. *See* FOF No. 24.

(8)    ***Payment Method.*** The "payment method" factor weighs heavily against finding that Mr. Losieniecki was an employee. As discussed, Mr. Losieniecki was not compensated for his work at all, aside from being permitted to stay in an Airbnb room that was already reserved for his wife. FOF Nos. 9, 27. He certainly received no wages or other monetary compensation suggestive of an employment relationship. *See* FOF No. 27.

(9)    ***Hired party's role in hiring and paying assistants.*** The "hired party's role in hiring and paying assistants" factor is neutral or inapplicable here. There is no evidence that Mr. Losieniecki had any "assistants" at all.

(10)    ***Hiring Party's Regular Business.*** The "in business" and "regular business" factors are neutral, or at least their application here is unclear. Certainly, MSTM is not in the regular business of creating or selling photographs. *Cf. Reid*, 400 U.S. at 753 ("Creating sculptures was hardly 'regular business' for CCNV.") (citation omitted). Indeed, strictly speaking, MSTM is not involved in any "business" at all, so much as it is involved in non-profit activism. *See* FOF No. 2. But MSTM is arguably in the "business" of promoting and fundraising for its activism, which includes the sort of protest events Mr. Losieniecki agreed to photograph. Regardless, these factors do not shed much light on whether Mr. Losieniecki was an "employee" here, and the Court finds them to be largely inapposite.

(11) *Tax Treatment.* The "tax treatment" factor weighs against a finding that Mr. Losieniecki was an employee. MSTM did not provide Mr. Losieniecki with a W-2 or any other tax form, and there is no evidence that it "treated" him as anything for any tax purpose. *See* FOF No. 29.

(12) *Employee Benefits.* The "employee benefits" factor weighs against a finding that Mr. Losieniecki was an employee. Mr. Losieniecki did not receive any "employee benefits" at all, aside from being permitted to stay in an Airbnb room that was already reserved for his wife and other staff. *See* FOF Nos. 9, 27, 29.

Weighing these considerations in a holistic manner, the Court finds that, on balance, they weigh against finding that Mr. Losieniecki was an employee. Indeed, to the extent Mr. Losieniecki's volunteer status could be analogized to an employment relationship at all, it would be that of a "non-agent independent contractor" (albeit without a contract), hired "to perform a particular, discrete task." *Reichard v. United of Omaha Life Ins. Co.*, 331 F. Supp. 3d 435, 472 (E.D. Pa. 2018), *aff'd*, 805 F. App'x 111 (3d Cir. 2020). Ultimately, nothing about Mr. Losieniecki's relationship with MSTM approximates that of a traditional employee.

## III. The Court will enter declaratory judgment on aspects of Count IV of the complaint.

Consistent with the above findings and conclusions, the Court will enter declaratory judgment in favor of Plaintiff Losieniecki, and against Defendants Mendez and MSTM, on aspects of Count IV of the complaint as follows:

(1) Plaintiff Robert Losieniecki has the exclusive right to ownership, control, and use of all photographs that he took in Washington D.C. on September 12 and 13, 2019, including the 26 photographs identified in U.S.

Copyright Registration VA 2-173-194 and effective October 9, 2019, titled "DC 2019."

(2)    The U.S. Copyright Registration filed and obtained on behalf of Defendant MSTM, identified as VA 2-176-197, dated October 31, 2019, and titled "Military Sexual Trauma Movement takes on Washington D.C." is invalid.

## <u>CONCLUSION</u>

For all the reasons discussed above, the Court grants Plaintiffs' motion for declaratory judgment insofar as it seeks a declaration that Plaintiff Robert Losieniecki owns the copyright in the disputed photographs.  The parties' cross-motions are otherwise denied.  An appropriate order follows.


DATED: November 13, 2020            BY THE COURT:

                                    /s/ *J. Nicholas Ranjan*
                                    United States District Judge